2004 ME 101

**STATE of Maine**

v.

**CORNHUSKERS MOTOR LINES, INC.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 24, 2004.

Decided: Aug. 2, 2004.

Stephanie Anderson, District Attorney, William J. Barry, Asst. Dist. Atty., Portland, for State.

Alexander MacNichol, Esq., Jackson & MacNichol, Portland, for defendant.

Scott D. Gardner, Esq., Hobbins & Gardner, LLC, Saco, for amici curiae.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Cornhuskers Motor Lines, Inc. appeals from a judgment of the Superior Court (Cumberland County, *Humphrey, D.C.J.*) finding it guilty of two counts of making false reports of its driver's activities pursuant to 29–A M.R.S.A. § 558(1) (Supp.2003) (Class E),[1] which criminalizes violations of 49 C.F.R. § 395.8(e) (2003). On appeal, Cornhuskers contends that sections 558(1) and 395.8(e) do not impose strict liability on carriers for their drivers' violations, and the Superior Court improperly allowed toll receipts to be entered into evidence over a hearsay objection. We disagree and affirm the judgment.

I. BACKGROUND

[¶ 2] In November, 2002, a motor carrier inspector with the Maine State Police stopped a truck driven by an employee of Cornhuskers Motor Lines, Inc. Upon request, the driver produced his logbook and his toll and fuel receipts for inspection. The inspector noticed discrepancies between the toll receipts and the logbook entries and concluded that the driver had falsified his logbook in violation of 49 C.F.R. § 395.8(e), a federal regulation adopted by the Bureau of State Police pursuant to 29–A M.R.S.A. § 555(2) (1996 & Supp.2003). After being issued two tickets for these violations, the driver pled nolo contendere to both counts and the State subsequently filed two complaints against the driver's employer, Cornhuskers Motor Lines, Inc., for the same offenses.

II. DISCUSSION

A. Statutory Construction

[¶ 3] We review the interpretation of a statute de novo. *State v. McLaughlin,* 2002 ME 55, ¶ 5, 794 A.2d 69, 72.

[¶ 4] Title 29–A M.R.S.A. § 558(1) reads, in relevant part, "[a] person commits a Class E crime if that person violates or knowingly permits a violation of this subchapter or a rule adopted pursuant to this subchapter." One of the rules "adopted pursuant to this subchapter"[2] is 49 C.F.R. § 395.8(e) (2003), which reads:

> (e) Failure to complete the record of duty activities of this section or § 395.15, failure to preserve a record of such duty activities, or making of false reports in connection with such duty

---

1. Title 29–A M.R.S.A. § 558(1) has since been amended by P.L.2003, ch. 452, §§ Q–9, Q–10 (effective July 1, 2004), *codified at* 29–A M.R.S.A. § 558(1) (Supp.2003).

2. 9 C.M.R. 16 222 004–2 § 2(A) (2001).

activities shall make the driver and/or the carrier liable to prosecution.

 [¶ 5] While finding that Cornhuskers violated section 395.8(e),[3] the trial court made a specific finding that there was no evidence to suggest that Cornhuskers knowingly permitted its driver to falsify his records. Since the driver, rather than Cornhuskers, made the false report, Cornhuskers is guilty of violating section 395.8(e) if the regulation imposes strict liability on carriers for their drivers' violations. We conclude that it does.

[¶ 6] At trial, Cornhuskers agreed with the Superior Court's conclusion that the "and/or" language of section 395.8(e) imposes derivative liability on carriers for their drivers' false reports in connection with duty activities. On appeal, Cornhuskers changes its position and argues that section 395.8(e) does not impose strict liability on the carrier for its drivers' violations. We agree with Cornhuskers' earlier position that "[the court's] analysis under 395.8(e) is correct ... and, if [you were] sitting across the street [i.e. in Federal Court], you would be well justified in finding the defendant guilty." The Regulatory Guidance issued by the Federal Motor Carrier Safety Administration supports the trial court's conclusion that the federal regulation imposes strict liability on carriers for their drivers' falsifications of their records of duty status. In response to the question, "What is the carrier's liability when its drivers falsify records of duty status?," the guidance provides: "A carrier is liable both for the actions of its drivers in submitting false documents and for its own actions in accepting false documents.

Motor carriers have a duty to require drivers to observe the FMCSRs." Regulatory Guidance for Federal Motor Carrier Safety Regulations, 62 Fed.Reg. 16370, 16426 (April 4, 1997).

 [¶ 7] Cornhuskers alternatively claims that, even if the federal regulation imposes strict liability on carriers, when Maine made a violation of the federal regulation a violation of state law, through 29–A M.R.S.A. § 558(1), it changed the carrier's liability from derivative to one requiring a "knowing" violation with the inclusion of the "knowingly permits" language. Cornhuskers' interpretation would be correct if section 558(1) simply stated that a person is guilty if that person knowingly permits a violation of a rule adopted pursuant to this subchapter. Instead, the statute provides that a person is guilty of a crime if that person "knowingly permits" a violation of a rule adopted pursuant to the subchapter, *or* if that person "violates" the rule adopted pursuant to the subchapter.

[¶ 8] Cornhuskers argues that the above interpretation of section 558(1) renders superfluous the "knowingly permits" language. Cornhuskers contends that in order for the "knowingly permits" language to have meaning, it necessarily imposes a mens rea component on anyone not directly violating the regulation. We disagree.

 [¶ 9] We interpret criminal statutes "as being free from unnecessary and superfluous language." *State v. Tauvar*, 461 A.2d 1065, 1067 (Me.1983). The "knowingly permits" language is not superfluous for two reasons. First, 29–A M.R.S.A.

---

**3.** The Superior Court based this finding on its understanding that section 395.8(e) provides that carriers can be held liable for their drivers' false reports of duty activities. The court noted that this interpretation comports with the Maine statute on the criminal liability of organizations for crimes committed by their employees. Title 17–A M.R.S.A. § 60(1)(B) (1983) provides that an "organization is guilty of a crime when ... [t]he conduct or result specified in the definition of the crime is engaged in or caused by an agent of the organization while acting within the scope of his office or employment."

§ 558(1) applies to a number of federal regulations, not just 49 C.F.R. § 395.8(e), and some of those regulations are directed exclusively at drivers.[4] In such cases, the carrier violates the regulation only if it knowingly permits the violation. Second, even in a case when the carrier is liable for the actions of its drivers, the "knowingly permits" language allows the state to prosecute the driver's direct supervisor, if it can establish that the supervisor knowingly permitted a violation of the regulation.

### B. Hearsay Objection

[¶ 10] We review the admission or refusal to admit evidence for an inappropriate exercise of discretion. *State v. Shuman*, 622 A.2d 716, 718 (Me.1993). At trial, Cornhuskers objected to the introduction of the toll receipts, contending that since they were being offered to prove that the driver falsified his logs in violation of section 395.8(e), they were inadmissible hearsay. The court admitted the receipts as admissions by a party-opponent pursuant to M.R. Evid. 801(d)(2).

[¶ 11] To qualify as an admission by a party-opponent, a statement must be offered against a party and must be "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment ... made during the existence of the relationship ...." M.R. Evid. 801(d)(2)(D). When the driver handed over the toll receipts to the motor carrier inspector, the toll receipts became non-verbal statements offered by the driver. *See* M.R. Evid. 801(a)(2) ("A 'statement' is ... nonverbal conduct of a person, if it is intended by the person as an assertion."); *see also* Field & Murray, *Maine Evidence*, § 801.5 at 407 (2000 ed. 1999) (Admissions by party-opponent "may be oral or written or manifested by some

action or even by silence."). The trial court also found that at the time the driver provided the receipts to the inspector he was in the employ of Cornhuskers.

[¶ 12] To determine whether an agent is acting within the scope of his or her employment, we look to the Restatement (Second) of Agency:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits; [and]

(c) it is actuated, at least in part, by a purpose to serve the master ....

RESTATEMENT (SECOND) OF AGENCY § 228(1) (1958). *See Mahar v. Stone-Wood Transp.*, 2003 ME 63, ¶ 14, 823 A.2d 540, 544. The driver here was acting within the scope of his employment because he was performing his job for Cornhuskers at the time, and because handing over log books and supporting documents such as toll and fuel receipts is a task that drivers are required to perform as part of their employment pursuant to the Federal Motor Carrier Safety Regulations. *See* 49 C.F.R. § 395.8(k)(2) (2003) ("The driver shall retain a copy of each record of duty status for the previous 7 consecutive days which shall be in his/her possession and available for inspection while on duty."). The driver's toll receipts are statements made by an agent of Cornhuskers, during the existence of the employment relationship, "concerning a matter within the scope of the agency or employment" and therefore they qualify as admissions by a party-opponent.

---

4. *See, e.g.,* 49 C.F.R. § 395.8(f)(1) (2003) ("Drivers shall keep their records of duty status current to the time shown for the last change of duty status.").