2005 ME 40

Nancy S. HUBER

v.

Donna L. WILLIAMS et al.

Supreme Judicial Court of Maine.

Argued: Sept. 22, 2004.
Decided: March 21, 2005.

Gene R. Libby, Esq. (orally), Michael J. Donlan, Esq., Verrill & Dana, LLP, Kennebunk, for plaintiff.

David M. Sanders, Esq. (orally), Livermore Falls, Thomas S. Dean, Esq. (orally), Joyce, David & Hanstein, P.A., Farmington, J. Mitchell Flick, Esq., Winthrop, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Nancy S. Huber appeals from summary judgments entered in the Superior Court (Kennebec County, *Studstrup, J.*) in favor of J. Mitchell Flick and Oak Williams on Huber's claims against them pursuant to the Uniform Fraudulent Transfer Act (UFTA), 14 M.R.S.A. §§ 3571–3582 (2003). Huber also appeals from the court's judgment entered on a jury verdict in favor of Donna L. Williams on Huber's UFTA claim against her, asserting that the court erred in denying her motion for a new trial, the jury instructions were improper, and the court erred in refusing to admit certain exhibits in evidence. We affirm the judgments.

## I. BACKGROUND

[¶ 2] The disputes in the present case arise out of a series of land transactions involving the family of Alan E. Williams and his attorney, J. Mitchell Flick. Nancy S. Huber, a judgment creditor of Alan Williams, alleges that several of the land transactions should be avoided as fraudulent transfers pursuant to 14 M.R.S.A. §§ 3575, 3576.

[¶ 3] Alan Williams became indebted to Huber pursuant to a judgment that resulted from Huber's September 1998 complaint against him for breach of contract and unjust enrichment. Huber had sought to enforce her rights pursuant to a stumpage agreement that permitted Alan Williams to enter Huber's property in Lyman and harvest all merchantable timber. In January 2000, based on a jury verdict, the Superior Court entered a judgment against Alan Williams in favor of Huber in the amount of $49,055.28. Attorney Flick represented Alan during this litigation. Alan did not satisfy the judgment.

[¶ 4] Before Huber filed her complaint for damages against Alan Williams in September 1998, Donna L. Williams, Alan's wife, owned a parcel of land on Tower Road in Vienna, Maine. She transferred this parcel to her husband in August 1998. The following month, just before Huber filed the claim for damages against Alan that ultimately resulted in a verdict in her favor, Alan sold a portion of the parcel. He used some of the proceeds from the sale to purchase two abutting parcels, one on Egypt Pond Road, that were both ultimately deeded to his wife, Donna. Alan also transferred the remaining portion of the Tower Road property back to Donna in October 1998.

[¶ 5] Donna thereafter transferred the Egypt Pond property to attorney Flick in satisfaction of Alan's legal bills. Flick later sold that parcel to Oak A. Williams, who is Donna and Alan's son.

[¶ 6] Huber commenced the present action against Donna Williams seeking to avoid the transfers from Alan to Donna and to recover her damages through Donna. Huber later amended her complaint to include similar claims against Attorney Flick and Oak Williams.

[¶ 7] Both Oak Williams and Flick moved for summary judgments on the ground that there was no genuine issue of material fact that the deed transfers to them were not fraudulent. Huber responded with cross-motions for summary judgments. The court granted Oak Williams's and Flick's motions for summary judgments and denied Huber's.

[¶ 8] Huber's claim against Donna proceeded to a jury trial to determine whether the transfers in which Donna was involved were fraudulent. Viewed in the light most favorable to Donna as the prevailing party, *see Me. Farms Venison, Inc. v. Peerless Ins. Co.*, 2004 ME 80, ¶ 13, 853 A.2d 767, 769, the trial record reveals that Alan and Donna agreed in 1998 that Donna would transfer the Tower Road parcel in Vienna to Alan so that he, as the spouse who had experience conducting land transactions, could negotiate and conduct the sale of the property, then transfer any portion he could not sell back to Donna. Alan and Donna conducted the transfers in this manner as a matter of convenience, not with a purpose of defrauding creditors. Alan considered the proceeds from the sale of the property to be Donna's, not his. When Donna thereafter decided to transfer the remaining Egypt Pond property to Flick to pay some of Alan's legal bills, she was transferring her own property, not Alan's.[1]

_____

1. Although Huber's statements of material facts state, based on Alan's deposition testi-

[¶ 9] During trial, the court determined that three pieces of evidence offered by Huber were inadmissible: (1) Alan's bankruptcy petition; (2) a letter from Flick to Huber's attorney during her litigation against Alan, stating that Alan was "very close to being judgment proof"; and (3) Alan's supplemental answers to interrogatories from Huber's litigation against Alan. The court determined that the letter was hearsay and that the other two exhibits were cumulative evidence of Alan's bankruptcy or insolvency and that they were irrelevant as to any other information they provided.

[¶ 10] With the input of the parties, the court prepared jury instructions. The court did not instruct the jury, as Huber now contends it should have, that Alan and Donna's agreement regarding Alan's role in selling and purchasing property for Donna was not binding on any third parties, or that the later tender of property to Donna could not constitute value delivered to Donna in exchange for her initial transfer of the Tower Road property to Alan. Huber did not request instructions on these matters and did not object to the jury instructions on these grounds.[2]

[¶ 11] The jury returned a verdict in favor of Donna on all issues. Huber moved for a new trial pursuant to M.R. Civ. P. 59(a), arguing, inter alia, that the evidence compelled a finding that fraudulent transfers had occurred and that the jury instructions were erroneous. The court denied the motion and this appeal followed.

## II. DISCUSSION

[¶ 12] The parties dispute the application of two UFTA statutes, each of which independently defines a fraudulent transfer. 14 M.R.S.A. §§ 3575, 3576.

[¶ 13] Section 3575 defines transfers that are fraudulent as to present and future creditors. *Id.* § 3575. A transferor violates section 3575 if the debtor made the transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor," *id.* § 3575(1)(A), or if the transfer was not for "reasonably equivalent value," *id.* § 3575(1)(B):

**§ 3575. Transfers fraudulent as to present and future creditors**

1. **Fraudulent Transfer.** A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

A. With actual intent to hinder, delay or defraud any creditor of the debtor; or

B. Without receiving a reasonably equivalent value in exchange for the transfer or obligations and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

---

mony, that Alan instructed Donna to make the transfer, Donna testified at trial that she made the transfer without Alan asking her to do so. The jury could reasonably have believed Donna.

**2.** Although Huber argues that the court erred in refusing to give certain of her proposed jury instructions, those proposed instructions did not stand for the propositions Huber now advances on appeal. The proposed instructions were not derived from UFTA and were not necessary to understand the relevant statutes. *See Niedojadlo v. Cent. Me. Moving & Storage Co.*, 1998 ME 199, ¶ 8, 715 A.2d 934, 936 (stating that an error in jury instructions is only reversible if it results in prejudice).

(2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debts became due.

**2. Determination of actual intent.** In determining actual intent under subsection 1, paragraph A, consideration may be given, among other factors, to whether:

A. The transfer or obligation was to an insider;

B. The debtor retained possession or control of the property transferred after the transfer;

C. The transfer or obligation was disclosed or concealed;

D. Before the transfer was made or obligation was incurred, the debtor sued or threatened with suit;

E. The transfer was of substantially all the debtor's assets;

F. The debtor absconded;

G. The debtor removed or concealed assets;

H. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

I. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

J. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

K. The debtor transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

*Id.* § 3575.

[¶ 14] Section 3576 defines transfers that are fraudulent as to present creditors for debts that arose before the transfer was made. A transfer is fraudulent pursuant to section 3576 if the transfer is made without the receipt of reasonably equivalent value, *id.* § 3576(1), or is a preferential transfer to an insider, *id.* § 3576(2):

**§ 3576. Transfers fraudulent as to present creditors**

**1. Transfers without receipt of reasonably equivalent value.** A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

**2. Transfer to insider.** A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

*Id.* § 3576.

A. Judgment in Favor of Donna Williams

1. Denial of Huber's Motion for a New Trial

[¶ 15] Although Huber refers to evidence to support her claim that Alan actually intended to defraud her through the series of transactions, *see id.* § 3575(1)(A), the jury was not required to believe the evidence Huber describes, *see Irish v. Gimbel,* 2000 ME 2, ¶ 8, 743 A.2d 736, 738. Although the jury could have found, from this record, that Donna received the property from Alan as a result of his fraudulent attempt to transfer it

away from his creditors, it was not compelled to so find. Fact-finders are not required to believe or disbelieve witnesses and are called upon to determine the significance of the evidence and decide what inferences, if any, to draw from that evidence. *Id.*

[¶ 16] Because there was evidence before the jury from which it could have concluded that Donna compensated Alan for his later transfers to her by making the initial transfer of the Tower Road property to him, the jury could reasonably have determined that Alan did not actually intend to injure Huber as a creditor, *see* 14 M.R.S.A. § 3575(1)(A), and did not transfer property to Donna "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligations," *id.* § 3575(1)(B). The trial court did not clearly and manifestly exceed the bounds of its discretion in denying the motion for a new trial. *See Budzko v. One City Ctr. Assocs. Ltd. P'ship,* 2001 ME 37, ¶ 17, 767 A.2d 310, 315.

### 2. Jury Instructions

■ [¶ 17] Huber contends that the court committed obvious error in failing to instruct the jury that any evidence of any understanding that Alan was acting on Donna's behalf was enforceable only between the two of them, not against a third party such as Huber. Reviewing this unpreserved claim of error in the jury instructions for obvious error, we conclude that the failure to provide such an instruction did not so damage the proceeding as to seriously affect its fairness or integrity. *See Morey v. Stratton,* 2000 ME 147, ¶¶ 9–10, 756 A.2d 496, 499. The jury's role was to determine whether Alan and Donna's transfers were fraudulent pursuant to the statute, not whether any contracts were enforceable against third parties. We conclude that the court did not commit obvious error in its jury instructions, which fairly apprised the jury of the law it was to apply.

### 3. Exclusion of Evidence

■ [¶ 18] Huber next contends that the court erred in refusing to admit (1) Alan's bankruptcy petition; (2) a letter from Flick to Huber's attorney regarding a possible compromise; and (3) Alan's supplemental answers to interrogatories in Huber's suit against him, which were deemed admissible for impeachment only. We affirm the court's exercise of its discretion.

■ [¶ 19] The court acted within the bounds of its discretion in excluding each piece of evidence. *See State v. Cornhuskers Motor Lines, Inc.,* 2004 ME 101, ¶ 10, 854 A.2d 189, 192. The letter between two lawyers who did not testify in the trial is hearsay, *see* M.R. Evid. 801, 802, and Alan's bankruptcy petition and supplemental answers to interrogatories were cumulative evidence given Huber's and Alan's testimony that Alan filed for bankruptcy and had debts discharged, *see* M.R. Evid. 403. The court acted within its discretion in refusing to admit these exhibits.

### B. Summary Judgment Against Flick

[¶ 20] Huber contends that the transfer from Donna to attorney Flick, as described in her statement of material facts, was voidable pursuant to sections 3575 and 3576 of UFTA. In the alternative, she argues that there are genuine issues of material fact that preclude summary judgment on her claims against Flick. We analyze each statutory claim separately to determine de novo whether the statements of material facts, viewed in the light most favorable to Huber, generate a genuine issue of material fact and whether Flick was entitled to judgment as a matter of law. *See Anchorage Realty Trust v. Don-*

*ovan,* 2004 ME 137, ¶ 11, —— A.2d ——, ——, 2004 WL 2495851.

### 1. Section 3575

■ [¶ 21] Because Huber does not raise any issue regarding whether the transfer to Flick was for "reasonably equivalent value," pursuant to 14 M.R.S.A. § 3575(1)(B),[3] we consider only whether there is a genuine issue of material fact regarding whether the transfer was fraudulent pursuant to section 3575(1)(A), which applies if the debtor made the transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." *Id.* § 3575(1)(A).

■ [¶ 22] It must be recalled that Alan did not have title to the property transferred to Flick. Rather, his wife Donna held title. Accordingly, establishing that the transfer from Donna to Flick was fraudulent pursuant to this paragraph requires a showing that Alan, the debtor, indirectly transferred *his* property to Flick through Donna with the requisite intent. *See* 14 M.R.S.A. § 3572(12) (defining "transfer" to include direct and indirect modes of parting with an asset). Thus, unless there is some issue of material fact regarding Alan's ownership of the property, we must affirm the summary judgment in Flick's favor.

[¶ 23] Although Huber attempted to address this factor in her statement of material facts by denying that Flick accepted the land solely to satisfy some of his legal bills, she failed to assert any facts establishing Alan's intent to transfer his property to Flick indirectly through Donna for the purpose of hindering, delaying, or de-

frauding Huber.[4] Huber's statement of material facts emphasizes Flick's close involvement in certain transfers as Alan's attorney, but simply does not raise an issue about Alan's ownership of the property. Without some factual dispute regarding Alan's intent to transfer his own property to Flick indirectly through Donna, to the detriment of Huber, there is no genuine issue of material fact and summary judgment in Flick's favor on the section 3575 claim was appropriate.

[¶ 24] Moreover, after the court entered its summary judgment in favor of Flick, the jury in Donna's trial found that Donna had not been a party to a fraudulent transfer. The jury was apprised of Donna's deed to Flick to pay for legal services Flick provided to Alan, but found that Donna's receipt of the property from Alan did not constitute a fraudulent transfer. This issue cannot be reopened during any later litigation of claims against Flick. *See Macomber v. MacQuinn–Tweedie,* 2003 ME 121, ¶ 22, 834 A.2d 131, 138–39 (" 'Issue preclusion . . . prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding.' ") (quoting *Machias Sav. Bank v. Ramsdell,* 1997 ME 20, ¶ 11, 689 A.2d 595, 599). Because the jury concluded that the transfer from Alan to Donna was not fraudulent as to Donna, Donna's transfer to Flick cannot now be regarded as an indirect transfer of Alan's property from Alan to Flick. Without a transfer from a debtor to a creditor, a fraudulent transfer cannot be established pursuant to section 3575(1)(A).

---

3. In connection with the summary judgment in favor of Flick, Huber argues only that the transfer from Alan to *Donna* was not for reasonably equivalent value.

4. Although Huber's statement of material facts indicated that Alan directed Donna to transfer property to Flick, this fact alone does not establish a genuine issue of material fact regarding Alan's ownership.

## 2. Section 3576

■ [¶ 25] Section 3576 defines transfers that are fraudulent as to present creditors for debts that arose before the transfer was made. Again, because Huber does not raise an issue regarding whether the transfer to Flick was for a reasonably equivalent value, *see* 14 M.R.S.A. § 3576(1), we need only consider the second type of fraudulent transfer defined in section 3576: a preferential transfer to an insider, *see id.* § 3576(2). A transfer by a debtor is fraudulent as a preferential transfer to an insider "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent." *Id.*

[¶ 26] Again, first and foremost, the statute requires a transfer from the debtor to a creditor. *Id.* Such a transfer may be an indirect transfer *Id.* § 3572(12). For Huber to have avoided a summary judgment in favor of Flick in the present case, she must have presented some proof, properly referenced in the statement of material facts, that demonstrates that Alan in fact transferred property to Flick. *See* M.R. Civ. P. 56(h).

[¶ 27] As with the section 3575 analysis, Huber's statement of material facts fails to raise a genuine issue of material fact regarding whether Alan, rather than Donna, owned the property that was transferred to Flick. To demonstrate an indirect transfer, there must be some proof of Alan's intentional delivery of his own property to Flick through Donna. Huber's

statement of material facts fails to establish an adequate factual basis for her contention that Alan, rather than Donna, transferred the property to Flick. Moreover, now that a jury has concluded that Alan's transfer of the property to Donna was not fraudulent as to Donna, we are constrained to regard Donna as the legitimate owner of the property. *See Macomber*, 2003 ME 121, ¶ 22, 834 A.2d at 138–39. Because Huber's statement of material facts fails to assert material facts demonstrating an indirect transfer from Alan to Flick within the meaning of section 3572(12), and because the jury verdict in Donna's favor forecloses further litigation of whether she was the legitimate owner of the parcel she deeded to Flick, *see Macomber*, 2003 ME 121, ¶ 22, 834 A.2d at 138–39, we must affirm the summary judgment on her section 3576 claim. Accordingly, we do not reach the question of whether Flick was an insider to Alan.[5]

## C. Summary Judgment Against Oak

■ [¶ 28] Huber contends that the transfer to Oak was also voidable pursuant to section 3575 of UFTA. In the alternative, she asserts that there are genuine issues of material fact that preclude summary judgment on her claim against Oak.

[¶ 29] We must determine whether there is a genuine issue regarding whether Alan transferred the parcel to Oak *indirectly* through Donna and Flick "[w]ith actual intent to hinder, delay or defraud" Huber. *Id.* § 3575(1)(A).

**5.** The statutory definition of "insider" provides an inclusive, rather than an exclusive list of "insiders":

"Insider" includes:
  A. If the debtor is an individual:
  (1) A relative of the debtor or of a general partner of the debtor;
  (2) A partnership in which the debtor is a general partner;

(3) A general partner in a partnership described in subparagraph (2); or
(4) A corporation of which the debtor is a director, officer or person in control ....
14 M.R.S.A. § 3572(7). The parties dispute whether Flick, as an attorney representing Alan in his litigation against Huber and in multiple land transactions, is an insider to Alan. We do not reach this question.

[¶ 30] Viewing the facts in Huber's favor, they do not generate a genuine issue of material fact because they fail to allege Alan's execution of an indirect transfer to Oak through Donna and Flick or Alan's intent to hinder, delay, or defraud Huber. *See id.* §§ 3572(12), 3575(1)(A). The court did not err in granting Oak a summary judgment on Huber's section 3575 claim.

[¶ 31] In sum, we affirm the judgment in Donna Williams's favor, as well as the summary judgments in favor of Attorney Flick and Oak Williams.

[¶ 32] The entry is:

Judgments affirmed.