STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-CV-15-227

ADRIANA M. BERNTSEN )
)
Plaintiff, )
)
v. )
)
DAVID L. BERNTSEN and )
OLIVIA DAVIS, )
)
Defendants. )

ORDER ON DEFENDANT DAVIS'S
MOTION TO DISMISS AND FOR
JUDGMENT ON THE PLEADINGS
AND DEFENDANT DAVIS'S
MOTION FOR SANCTIONS

STATE OF MAINE
Cumberland ss Clerk's Office

JAN 2 8 2016

RECEIVED

Before the Court are Defendant W.S. Olivia Davis's Motion to Dismiss and for Judgment on the Pleadings and Motion for Sanctions.[1] Oral argument on Davis's motions was held on January 8, 2016. Based on the following, Defendant Olivia Davis's Motion to Dismiss and for Judgment on the Pleadings and her Motion for Sanctions are both denied.

## I. BACKGROUND

Plaintiff Adriana M. Berntsen and Defendant David L. Berntsen are married, but have been separated for over three years. (Compl. ¶¶ 5, 7.) On October 20, 2014, Plaintiff filed for judicial separation with the District Court. (Id. ¶ 5.) On November 24, 2014, Defendant Berntsen answered with a counterclaim for divorce. (Id. ¶ 6.) Plaintiff and Defendant Berntsen presently are engaged in a divorce action before the District Court in Portland, docket number

---

[1] Only Davis has moved for dismissal, judgment on the pleadings, and sanctions. Defendant Berntsen has answered Plaintiff's complaint, but has not filed any motions in this case. Therefore, this order is confined to Plaintiff's claims against Davis as transferee. This order does not address nor impact Plaintiff's claims as to Defendant Berntsen for fraudulent transfer.

[2] In the complaint, Plaintiff named the Defendant as "Olivia Davis Bird" and refers to her as "Defendant Bird." (Compl. ¶ 3.) In her answer, Defendant Davis asserts that her actual name is W.S. Olivia Davis. (Davis Ans. ¶ 3.)

[3] Another factor the court may consider in determining whether the debtor acted with actual intent is whether "[t]he transfer or obligation was to an insider." 14 M.R.S. § 3575(2)(A). In her complaint and her opposition to Davis's motion, Plaintiff asserts that Davis is an "insider." (Compl. ¶ 27; Pl. Opp'n to Davis Mot. Dismiss & J. Pleadings 3-4.) However, if the debtor is an individual, the UFTA defines an "insider" as a relative of the debtor, a general partner of the debtor, a partnership or general partnership in

PORDC-FM-14-1092. (*Id.* ¶¶ 5-6.) Plaintiff asserts that Defendant W.S. Olivia Davis is Defendant Berntsen's live-in girlfriend.[2] (*Id.* ¶ 27.) Defendants Berntsen and Davis reside together at 7 Merrymeeting Drive in Portland, Maine. (*Id.* ¶¶ 2-3, 27.) The home at 7 Merrymeeting Drive is owned by Davis. (*Id.* ¶ 31.)

Plaintiff's complaint alleges that, on or about June 9, 2014, prior to the initiation of the divorce action, Defendant Berntsen opened joint checking and savings accounts with Davis. (*Id.* ¶ 14.) Plaintiff alleges that Defendant Berntsen has transferred marital assets to the checking account held with Davis and has comingled those marital assets with Davis's funds in order to conceal those assets from Plaintiff. (*Id.* ¶¶ 15-17, 22-23.)

Plaintiff also alleges Defendant Berntsen transferred funds to Davis in order for Davis to purchase the property at 7 Merrymeeting Drive and to make improvements on the property. (*Id.* ¶¶ 28-29.) Plaintiff asserts that Defendant Berntsen provided Davis with the funds to purchase the property in order to prevent Plaintiff and creditors from reaching the property and that Defendant Berntsen has an unrecorded interest in the property at 7 Merrymeeting Drive. (*Id.* ¶¶ 31, 34-35.) Franklin American Mortgage Company ("FAMC") is the holder of a mortgage deed for the property at 7 Merrymeeting Drive. (*Id.* ¶ 32.)

On May 22, 2015, Plaintiff filed a one-count complaint against Defendants Berntsen and Davis for fraudulent transfer under the Maine Uniform Fraudulent Transfer Act (the "UFTA"), 14 M.R.S. § 3571 et seq. (*Id.* at 1.) Plaintiff joined FAMC as a party-in-interest in the action. (*Id.* 4.) The complaint asks the court to avoid any transfers of property or assets from Defendant Berntsen to Davis, to enjoin Defendant Berntsen from any further transfers of property to Davis,

---

[2] In the complaint, Plaintiff named the Defendant as "Olivia Davis Bird" and refers to her as "Defendant Bird." (Compl. ¶ 3.) In her answer, Defendant Davis asserts that her actual name is W.S. Olivia Davis. (Davis Ans. ¶ 3.)

2

to award Plaintiff any property fraudulently transferred to Davis, and to order any other appropriate relief. (*Id.* at 5.)

On July 1, 2015, Davis filed an answer and a motion for sanctions. (Davis Ans. 1; Davis Mot. Sanctions 1.) Defendant Berntsen filed an answer to the complaint on July 2, 2015. (Berntsen Ans. 1.) On July 8, 2015, Davis filed a motion to dismiss and for judgment on the pleadings. (Davis Mot. Dismiss & J. Pleadings 1.) Plaintiff filed oppositions to both of Davis's motions on July 21, 2015. (Pl. Opp'n to Davis Mot. Sanctions 1; Pl. Opp'n to Davis Mot. Dismiss & J. Pleadings 1.) Davis also filed a reply memorandum to both oppositions. (Davis Reply to Pl. Opp'ns 1.)

## II.    DAVIS'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

### A.    Standard of Review

The court shall dismiss a civil action when the complaint fails "to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6). After the close of pleadings, any party may move for judgment on the pleadings. M.R. Civ. P. 12(c). "Both a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings test the legal sufficiency of the complaint." *MacKerron v. MacKerron*, 571 A.2d 810, 813 (Me. 1990) (internal citation, alterations, and quotation marks omitted). The sufficiency of a complaint is a question of law. *Id.* The court reviews the complaint in the light most favorable to the plaintiff to determine whether the complaint "sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676 (internal citation and quotation marks omitted). "A complaint is sufficient unless it appears to a certainty the plaintiff is entitled to no relief under any set of facts he might prove in support of his claim." *MacKerron*, 571 A.2d at 813 (internal citation, alterations, and quotation

3

marks omitted). Most complaints must meet the notice pleading standard. M.R. Civ. P. 8. However, allegations of fraud must be "stated with particularity," though intent may be averred generally. M.R. Civ. P. 9(b).

### B. The Uniform Fraudulent Transfer Act

In her complaint, Plaintiff avers that that she is a "foreseeable creditor," i.e., a future creditor, of Defendant Berntsen. (Compl. ¶ 23.) Under § 3575 of the UFTA, a transfer is fraudulent as to a future creditors, if the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor," or if the transfer was not for "reasonably equivalent value." *Huber v. Williams*, 2005 ME 40, ¶ 13, 869 A.2d 737; 14 M.R.S. § 3575(1)(A)-(B). Therefore, in order to survive a motion to dismiss and for judgment on the pleadings, Plaintiff's complaint must set forth each element of a claim for fraudulent transfer under § 3575 of the UFTA.

### C. Whether Plaintiff and Defendant Berntsen are a Future Creditor and Debtor under the UFTA.

Plaintiff asserts that she is a "foreseeable" or future creditor and Defendant Berntsen is a debtor under the UFTA by virtue of the fact that Plaintiff and Defendant Berntsen are presently engaged in a divorce proceeding. (Compl. ¶¶ 5-6.) The UFTA defines a "creditor" simply as "a person who has a claim." 14 M.R.S. § 3572(4). Similarly, the UFTA defines a "debtor" as "a person who is liable on a claim." *Id.* § 3572(5). The UFTA broadly defines a "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* § 3572(3). In a divorce action, the District Court will divide the all "marital property," i.e., all property acquired by either spouse subsequent to the marriage, between the spouses in

4

proportions that the court determines to be "just." 19-A M.R.S. § 953(1)-(3). Further, upon the filing of a divorce complaint, non-owner spouses have an "inchoate equitable ownership interest" in the individual retirement accounts or similar plans owned by the other spouse. *Id.* § 953(6-A). Therefore, at the conclusion of a divorce action, one spouse may have claim against another spouse for certain marital property.

Based on the broad definitions in the UFTA, the court in *Henderson* held that the UFTA "is available to void a spouse's fraudulent transfer of marital assets out of the marital estate in an attempt to defeat the other spouse's marital interest in that asset." *Henderson v. Henderson*, 2001 Me. Super. LEXIS 169, at *4 (Aug. 8, 2001). However, the marital assets at issue in *Henderson* had been fraudulently transferred out of the marital estate after, not before, a divorce action had commenced. *Id.* at *2-3. Thus, it is arguable that the *Henderson* court's holding, that a spouse can avoid fraudulent transfers of marital assets under the UTFA, only applies to transfers of marital assets that occurred after the initiation of a divorce action and that *Henderson* does not extend the UFTA to transfers marital assets that occurred prior to the initiation of a divorce action.

At oral argument, Plaintiff's counsel agreed with this interpretation of *Henderson* and conceded that Plaintiff only became a future creditor of Defendant Berntsen for transfers that are alleged to have happened after the filing of the divorce action. Therefore, based on counsel's concession, Plaintiff in this case is a future creditor under the UFTA only with regard to transfers of marital property that occurred after the initiation of the underlying divorce action.

Many of the transfers involving Davis alleged in the complaint occurred prior to the initiation of the divorce action. Plaintiff alleges that Defendant Bentsen opened a joint checking and savings accounts with Davis at Town & Country Federal Credit Union ("TCFCU") on or

5

about June 9, 2014. (Compl. ¶ 14.) Plaintiff alleges that Defendant Berntsen then transferred $50,000.00 from his J.P. Morgan Chase Retirement Money Market Account (the "IRA Account") to the TCFCU checking on or about June 16, 2014. (*Id.* ¶ 15.) Plaintiff alleges that Defendant Berntsen also made deposits of $17,879.79 and $4,120.21 to the TCFCU checking on or about July 3, 2014. (*Id.* ¶¶ 16-17.) Plaintiff further alleges that Defendant Berntsen transferred $32,000.00 to Davis in order for Davis to purchase the property located at 7 Merrymeeting Drive, which was purchased on or about August 4, 2014. (*Id.* ¶¶ 28, 31-32.) Plaintiff also asserts that, on or about October 1, 2014, Berntsen transferred $1,550.00 to Davis as "rent." (*Id.* ¶ 30.)

According to Plaintiff, she filed for judicial separation from Defendant Berntsen on October 20, 2014, and Defendant Bentsen filed a counterclaim for divorce on November 24, 2014. (*Id.* ¶¶ 5-6.) Thus, all of the alleged transfers of marital assets to Davis discussed above occurred prior to the filing of the divorce actions. Therefore, Plaintiff was not a future creditor under the UFTA with claims to these assets at the time of their transfer, and Plaintiff cannot avoid these transfers under § 3575 of the UFTA.

However, Plaintiff complaint does allege two transfers of marital assets to Davis that may have occurred after the initiation of the divorce action on November 24, 2014. Plaintiff's complaint alleges that, on or about August 1, 2014, Defendant Berntsen began diverting his direct-depositing paychecks from the marital checking account held jointly with Plaintiff at TD Bank to a TCFCU account held jointly with Davis in order to hide those assets from Plaintiff. (*Id.* ¶¶ 22-23.) Plaintiff's complaint does not aver that Defendant ever ceased diverting his paychecks to a TCFCU account. Thus, viewing the complaint in the light most favorable to Plaintiff, as is required by rule, the complaint alleges that Defendant Bentsen has continued to

6

divert his paychecks to a TCFCU account held jointly with Davis. Therefore, although Plaintiff is not a future creditor with claims to Defendant Berntsen's paychecks diverted to a TCFCU account prior to the filing of the divorce action, Plaintiff's complaint sets forth sufficient allegations that Plaintiff may be a future creditor with claims for Defendant Bentsen's paychecks diverted to the to a TCFCU account held jointly with Davis after the initiation of the divorce action on November 24, 2014.

Plaintiff's complaint also alleges that Defendant Berntsen transferred $17,000.00 to Davis in order for Davis to make improvements on the property located at 7 Merrymeeting Drive. (*Id.* ¶ 29.) Plaintiff does not aver when then this transfer occurred. Thus, viewing the complaint in the light most favorable to Plaintiff, it is possible that this alleged transfer occurred after the filing of the divorce action on November 24, 2014. Therefore, Plaintiff's complaint sufficiently alleges that Plaintiff is a future creditor with a claim to $17,000.00 of marital property against Defendant Berntsen as a debtor.

Applying the standard of review required under Rule 12(b)(6), (c), Plaintiff's complaint sufficiently alleges that she is a future creditor with claims against debtor Defendant Berntsen for his paychecks diverted to an account jointly held with Davis after November 24, 2014, and for $17,000.00 of marital assets transferred to Davis. Naturally, if discovery reveals that these transfers in fact occurred before commencement of the divorce action, the arguments that Davis has advanced in the present motion may form the basis of a motion pursuant to Rule 56.

D.    Whether Defendant Berntsen made Transfers to Davis.

The UFTA broadly defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an

7

asset, and includes payment of money, release, lease or creation of a lien or other encumbrance." 14 M.R.S. § 3572(12).

As previously stated, Plaintiff's complaint alleges that on or about August 1, 2014, Defendant Berntsen diverted his direct-depositing paychecks from the TD Bank account held jointly with Plaintiff to a TCFCU account held jointly with Davis. (Compl. ¶ 22.) Plaintiff's complaint also avers that Defendant Berntsen transferred $17,000.00 in cash to Davis in order to make improvements to the property at 7 Merrymeeting Drive. (*Id.* ¶ 29.) Thus, Plaintiff's complaint asserts sufficient facts that, if proved, constitute a transfer of assets from Defendant Berntsen to Davis under the UFTA.

E.    Whether Defendant Berntsen Transferred Assets to Davis with Actual Intent to Hinder, Delay, or Defraud Plaintiff

A transfer is fraudulent as to a future creditor under § 3575(1)(A) if the debtor made the transfer "[w]ith actual intent to hinder, delay or defraud" a creditor. 14 M.R.S. § 3575(1)(A). In determining whether the debtor acted with "actual intent," the court may consider any relevant factors, including whether the debtor retained possession or control of property after the transfer, whether the transfer was concealed, whether the debtor has removed or concealed the assets, and whether the debtor absconded. 14 M.R.S. § 3575(2). Although allegations of fraud must be pled with particularity, averments of intent in pleadings may be made generally. M.R.Civ. P. 9(b).

Plaintiff generally avers that Defendant Berntsen transferred marital assets and comingled those assets with Davis's funds in order to hide those assets from Plaintiff. (Compl. ¶ 23.) This averment, if proven, would support the conclusion that Defendant Berntsen transferred assets to Davis with intent to defraud Plaintiff or hinder her ability to assert a claim for the assets.

8

Therefore, Plaintiff's complaint sets forth sufficient allegations that would entitle Plaintiff to relief under § 3575(1)(A) of the UFTA.[3]

F.      Whether Defendant Berntsen Transferred Assets to Davis Without Receiving Reasonably Equivalent Value in Exchange for the Transfers.

A transfer is fraudulent as to a future creditor under § 3575(1)(B) if the debtor transferred the asset without receiving a equivalent value in exchange for the transfer and either: (1) the debtor was engaged or about to engage in a business or transaction for which the remaining assets of debtor are insufficient, or (2) the debtor intended, believed, or reasonably should have believed, that they would incur debts beyond their ability to pay. 14 M.R.S. § 3575(1)(B).

Plaintiff's complaint asserts that Berntsen has received no equivalent value in exchange for the assets transferred to Davis. (Compl. ¶ 37.) Plaintiff also avers that Defendant Berntsen has not received equivalent value in exchange for the funds transferred to Davis for the purchase of the property. (Id. ¶ 38.) Plaintiff's complaint also alleges that Defendant Berntsen's transfers to Davis have left Defendant Berntsen insolvent or increased his insolvency. (Id. ¶ 39.) However, Plaintiff's complaint concedes that Defendant Berntsen resides at Defendant Davis's residence located at 7 Merrymeeting Drive. (Id. ¶¶ 2, 31.)

The fact that Defendant Berntsen resides at Defendant Davis's residence may suggest that Defendant Berntsen has received some value in exchange for the alleged transfers to Davis. However, viewing the allegations in the light more favorable to Plaintiff, the facts averred could

---

[3] Another factor the court may consider in determining whether the debtor acted with actual intent is whether "[t]he transfer or obligation was to an insider." 14 M.R.S. § 3575(2)(A). In her complaint and her opposition to Davis's motion, Plaintiff asserts that Davis is an "insider." (Compl. ¶ 27; Pl. Opp'n to Davis Mot. Dismiss & J. Pleadings 3-4.) However, if the debtor is an individual, the UFTA defines an "insider" as a relative of the debtor, a general partner of the debtor, a partnership or general partnership in which the debtor is a general partner, or a corporation in which the debtor is a director, officer, or person in control. 14 M.R.S. § 3572(7)(A)(1)-(4). The complaint only alleges that Davis is Defendant Berntsen's live-in girlfriend. (Compl. ¶ 27.) Therefore, Davis is not an insider within the definition of the UFTA. Nevertheless, as discussed above, the complaint asserts other facts that, if proven, sufficiently establish that Defendant Berntsen acted with actual intent to defraud, hinder, or delay Plaintiff.

9

support a finding that Defendant Bentsen did not receive a reasonably equivalent value in exchange for the transfers and that the transfers have left Defendant Berntsen unable to pay his debts. Therefore, Plaintiff's complaint sets forth sufficient allegations that, if proven, would entitle Plaintiff to relief under § 3575(1)(B) of the UFTA.

Based on the foregoing, regarding only Plaintiff's claims against Davis as transferee, Plaintiff's complaint sufficiently sets forth a cause of action for fraudulent transfer as to a future creditor under both § 3575(1)(A) and § 3575(1)(B) of the UFTA for any paychecks diverted by Defendant Berntsen to an account jointly held with Davis after November 24, 2014, and for the $17,000.00 transferred to Davis. Therefore, Davis's motion to dismiss and for judgment on the pleadings is denied.

## III. DAVIS'S MOTION FOR SANCTIONS

### A. Standard of Review

Pursuant to Maine Rule of Civil Procedure 11, every pleading must be signed by at least one attorney of record. M.R. Civ. P. 11(a). The signature constitutes a representation that the attorney has read the pleading; that to the best of the attorney's knowledge, information, and belief there are good grounds to support the pleading; and that it is not interposed for delay. *Id.* If a pleading is signed with intent to defeat the purpose of Rule 11, the court may impose appropriate sanctions upon the attorney, the client, or both. *Id.* Appropriate sanctions may include an order to pay the other party's expenses and reasonable attorney fees. *Id.*

The purpose of Rule 11 is to impress upon any attorney the seriousness of their obligations. *Paradis v. Webber Hosp.*, 409 A.2d 672, 675 (Me. 1979). However, an attorney need only believe that there are good grounds to support the pleading. *Id.* An attorney has no

10

affirmative duty to ascertain the truthfulness of the client's claims or assess the credibility of the client. *Id.*; 2 Harvey, *Maine Civil Practice* § 11.3 at 399 (3d ed. 2011).

### B. Analysis

In her motion for sanctions, Davis asserts that Plaintiff filed this complaint in order to delay the divorce action between Plaintiff and Defendant Berntsen, conduct impermissible discovery relevant to the divorce action, and to harass Davis. (Davis Mot. Sanctions ¶ 7.) Davis states that the discovery period for pending divorce action has closed and that Plaintiff filed this complaint against Defendant Berntsen and Davis in order to conduct additional discovery. (*Id.* ¶¶ 4, 7.) Davis asserts that, soon after filing the complaint, Plaintiff served requests for production of documents and interrogatories on Davis. (*Id.* ¶¶ 2, 4.) Davis's motion for sanctions makes no assertions in support of her arguments that Plaintiff filed the complaint to delay the divorce matter or to harass Davis.

Sanctions are not warranted, as there is no indication that Plaintiff's counsel signed complaint with intent to defeat the purpose of Rule 11. First, Plaintiff's motion does not provide any basis for finding that Plaintiff filed the complaint to delay the divorce matter or to harass Davis. Further, after Davis filed her motion for sanctions in this action, the District Court continued the divorce action in order for the parties to engage in a judicial settlement conference. (Pl. Opp'n to Davis Mot. Sanctions, Ex. 2.) Second, there is no indication that the complaint was filed to circumvent the close of discovery in the divorce action. In fact, the District Court order continuing the divorce action also permitted the parties to engage in additional discovery if judicial settlement is unsuccessful. (*Id.*)

11

Third, there are good grounds to support Plaintiff's complaint. In a divorce action, the District Court has subject matter jurisdiction to determine the spouses' ownership interests and distribute marital property. *Howard v. Howard*, 2010 ME 83, ¶ 11, 2 A.3d 318. However, the District Court lacks personal jurisdiction over third parties not involved in the divorce action. *Id.* ¶ 12. Further, the Rules for the Family Division of the Maine District Court restrict the ability to join additional parties or claims. *Id.* ¶ 16. Only parties entitled to participate in a Family Division action may be joined in a pending Family Division action. M.R. Civ. P. 111(a)(2). Similarly, only claims that may be brought in the Family Division may be joined with pending claims before the Family Division. M.R. Civ. P. 111(a)(1). Thus, Plaintiff could not join Davis and FAMC as parties in the divorce action, nor assert her additional claims for fraudulent transfer in the divorce action. Therefore, Plaintiff properly filed a separate action for fraudulent transfer against Defendants and the party-in-interest with this court. *See Howard*, 2010 ME 83, ¶ 18, 2 A.3d 318.

Because Plaintiff had to file a separate action in order to her assert claims of fraudulent transfer against both Defendant Berntsen and Davis and to join FAMC as a party-in-interest, there are good grounds to support the complaint. Therefore, Rule 11 sanctions are not warranted in this case.

## IV.    CONCLUSIONS

Based on the foregoing, Defendant Olivia Davis's Motion to Dismiss and for Judgment on the Pleadings is denied.

Defendant Olivia Davis's Motion for Sanctions is also denied.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 1/28/16

Lance E. Walker
Justice, Superior Court

13