2003 ME 121

**Robert MACOMBER Jr.**

v.

**Lisa MacQUINN–TWEEDIE et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 7, 2002.
Decided: Oct. 14, 2003.

Richard L. O'Meara, Esq. (orally), Murray Plumb & Murray, Portland, for plaintiff.

Peter R. Roy, Esq. (orally), Roy Beardsley Williams & Granger, LLC, Ellsworth, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Robert Macomber appeals from a summary judgment by the Superior Court (Hancock County, *Jabar, J.*) determining that an action brought by him and Robert DeSimone to compel arbitration is barred by the doctrine of res judicata. Macomber contends that the Superior Court erred by: (1) reaching the affirmative defense of res judicata where the sole purpose of this action is to compel arbitration, and (2) ruling that his participation as a party-in-interest in an earlier foreclosure proceeding barred his breach of contract claim on the ground of res judicata. Because we conclude that the Superior Court properly reached the issue of res judicata, but erred by determining that the breach of contract claim raised in this action is precluded by the earlier foreclosure judgment, we vacate the judgment.

## I. CASE HISTORY

[¶ 2] The record indicates that in the early 1990s, Robert Macomber, Robert DeSimone, Lisa MacQuinn–Tweedie and her husband James K. Tweedie jointly owned the Park Entrance Motel property in Bar Harbor. The property included approximately eight acres of land, with a three-acre, undeveloped parcel situated on a point overlooking Hulls Cove. This three-acre parcel was called the Point Parcel. Since the early 1990s, the property has been subject to shifting ownership arrangements, contractual disputes, and litigation among the parties. Only a small portion of that history is reflected in this opinion.[1]

[¶ 3] In 1996, the parties agreed to settle one phase of the on-going litigation by an agreement dated June 5, 1996, which the parties subsequently revised by an agreement dated August 24, 1996 (collectively, the 1996 agreement). Among other things, they agreed that: (1) Macomber and DeSimone would deed their fifty percent interest in the Park Entrance Motel property to the Tweedies; (2) the Tweedies would pay certain debts obligating Macomber and DeSimone; (3) Macomber and DeSimone would receive an irrevocable option to purchase the Point Parcel; (4) Macomber and DeSimone were given the option to obtain replacement financing in the event that the Tweedies defaulted upon a mortgage to the Union Trust Company and other lenders; (5) the Point Parcel could be partitioned from the remainder of the Park Entrance Motel property subject to conditions imposed by Union Trust Company; and (6) the Tweedies would act in good faith for purposes of meeting the requirements relating to the partition of the Point Parcel. The 1996 agreement also specified that any disputes between Macomber and DeSimone and the Tweedies would be resolved by binding arbitration in accordance with the provisions of the Maine Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–5949 (2003).

[¶ 4] A subsequent 1997 agreement granted an irrevocable option to purchase the Point Parcel to corporations owned by Macomber and DeSimone. As part of the agreement, the Tweedies agreed to exercise their best efforts to comply with the terms and conditions of the Union Trust mortgage.

[¶ 5] In 1998, the parties agreed to participate in arbitration on the claims by Macomber and DeSimone: (1) that the Tweedies had breached the obligations of the 1996 agreement by not making their best efforts to comply with the terms of the Union Trust mortgage, and (2) to allow Macomber and DeSimone to obtain replacement financing to facilitate the partition of the Point Parcel from the remainder of the property. An arbitration proceeding, however, was never held.

[¶ 6] In 1999, the Tweedies defaulted on their mortgage payments to Union Trust. Also, in 1999, the Tweedies signed a contract with David Witham, who attempted to assist Macomber and DeSimone with financing. Pursuant to this 1999 contract, the Tweedies granted Witham a ninety-nine-year lease on the five-acre Park Entrance Motel property and agreed to sell the Point Parcel to Witham. Macomber and DeSimone were not parties to this contract; however, shortly after signing the contract, Witham assigned his interest in this contract to Macomber and DeSimone. The Tweedies then indicated that they would not honor the 1999 contract

---

1. This is the third time in the past decade that issues relating to the Park Entrance Motel and these parties have reached this Court. *See* *Union Trust. v. MacQuinn–Tweedie*, 2001 ME 43, 767 A.2d 289; *Key Bank of Me. v. Park Entrance Motel*, 640 A.2d 211 (Me.1994).

that Witham had assigned to Macomber and DeSimone. Macomber and DeSimone then filed a declaratory judgment action attempting to enforce and determine the validity of the 1999 contract. That action, *DeSimone v. Tweedie*, CV–99–038, remains pending in Superior Court in Hancock County.

[¶ 7] In December 1999, Union Trust commenced foreclosure proceedings against the Tweedies in the Bar Harbor District Court. Macomber and DeSimone received notice of the proceeding because they had previously filed a lis pendens in the Hancock County Registry of Deeds, and they thereafter actively participated in the foreclosure proceeding as parties-in-interest. During the course of the proceedings, they moved the District Court to: (1) compel Union Trust Company to assign the Park Entrance Motel and the promissory notes to them, and (2) order a bifurcated auction so that the Point Parcel could be carved out of the Park Entrance Motel property and sold separately. Macomber and DeSimone sought this relief, which they characterized as equitable in nature, based upon their claims, as characterized in their subsequent appellate brief, that:

> Despite the Tweedies' agreement to act in good faith to permit release of the three-acre parcel from the operation in effect of the Union Trust mortgage, their agreement not to participate or become involved in any negotiations with Thomas Walsh or his various entities and their obligation to use their best efforts to comply with all the terms and conditions of their promissory note and mortgage with the Union Trust Company for the release of the ( [P]oint) property as soon as practicable ..., the Tweedies breached all of those agreements and the mortgage conditions with the Union Trust Company.

They also asserted that "the Tweedies intentionally went into default with Union Trust to force a foreclosure action to attempt to extinguish DeSimone, Macomber [and their corporations'] option on the 3.01–acre [P]oint [P]arcel."

[¶ 8] After a trial, the District Court (Bar Harbor, *Staples, J.*) granted Union Trust Company a judgment of foreclosure. In its judgment, the court ruled that the option to purchase the Point Parcel did not convey to Macomber and DeSimone an actual interest in the land. Accordingly, the court denied their request that they be assigned the mortgage. The court also denied their motion seeking a bifurcated auction for the Point Parcel:

> [T]he court finds no authority to compel the Plaintiff to conduct such a foreclosure sale. At most it could be an option to be exercised by the Plaintiff if the mortgage provisions allow for it. In addition the Court would note that no evidence of fraud was introduced at the hearing nor was there any other evidence warranting such an order sounding in equity. Therefore the motion is denied.

[¶ 9] On appeal, we affirmed the foreclosure judgment, *Union Trust v. Mac-Quinn–Tweedie*, 2001 ME 43, 767 A.2d 289, holding that the District Court properly denied the motion to compel assignment of the mortgage because an option to purchase is a contractual right with a mortgagor, not a property right:

> Neither at law nor in equity is the holder of an option the functional equivalent of a mortgagee. Unlike a mortgagee, an optionee has no interest in the land. An option " 'is nothing more than an irrevocable and continuing offer to sell and conveys no interest in land to the optionee.' " *DiPietro v. Boynton*, 628 A.2d 1019, 1023 (Me.1993) (citation omitted). Because the option is a con-

tractual right derived from the mortgagor, it does not survive the foreclosure. The optionees' remaining contentions do not warrant discussion.

*Id.* ¶ 4, 767 A.2d at 290. Among the contentions raised by Macomber and DeSimone that were not expressly addressed in our opinion was the assertion that the District Court erred by denying their request for equitable relief.[2] Following the issuance of our opinion and the expiration of the redemption period, the Park Entrance Motel property was sold in September 2001.

[¶ 10] In March 2001, less than two weeks after our opinion affirming the judgment of foreclosure in *Union Trust v. MacQuinn–Tweedie,* Macomber and DeSimone sought to revive the arbitration process the parties had discussed in 1998. After the Tweedies refused to arbitrate issues relating to the 1996 agreement, Macomber and DeSimone commenced this action seeking to compel arbitration based on the same alleged breaches of the 1996 agreement by the Tweedies that were raised during the foreclosure trial in the District Court.[3] In preliminary proceedings, the Superior Court set aside a default and denied a motion for attachment and trustee process. The Tweedies then filed a motion to dismiss/motion for summary judgment, asserting that this action was barred by the doctrine of res judicata because the issues in the present action had been asserted and litigated during the course of the 1999–2000 foreclosure proceeding.

[¶ 11] After review of voluminous materials submitted in support of and in opposition to the combined motions for dismissal and summary judgment, and after a hearing, the Superior Court (Hancock County, *Jabar, J.*) entered a summary judgment for the Tweedies. The court determined that the District Court's consideration of issues relating to the 1996 agreement during the course of the foreclosure proceedings served to bar this action to compel arbitration on the grounds of res judicata, stating: "[T]he issues as set out in the plaintiff's complaint were resolved in earlier litigation." Robert Macomber then brought this appeal.

## II. DISCUSSION

### A. Consideration of Res Judicata Defense in Proceeding to Compel Arbitration

[¶ 12] Macomber contends that the Superior Court exceeded the scope of its statutory authority by considering the affirmative defense of res judicata before determining whether to compel arbitration. The Uniform Arbitration Act, 14

2. Macomber and DeSimone argued in their brief before us: "The Court should have applied its equitable powers in evidence of this case given Tweedies' unclean hands. It is well settled that fraud and breach of trust are among the fundamental grounds of equitable jurisdiction." They concluded that having "relied in good faith upon the conduct of the Tweedies [they would be] wrongfully deprived of the '[P]oint parcel' " absent a bifurcated auction of the mortgaged properties.

3. Paragraph 17 of the complaint alleged:
   The Tweedies have breached their 1996 settlement contract in ways including, but not limited to the following:

   a) The Tweedies breached their "best effort" and "good faith" obligations as referenced herein above;
   b) The Tweedies breached their obligation to allow Plaintiffs to obtain and put in place replacement financing "so as to facilitate the partition of the three-acre parcel [the point parcel] from Tweedie to [Macomber]"; and
   c) The Tweedies through their agent, Attorney Roy, violated the prohibition against any negotiation with Tom Walsh or his entities.

M.R.S.A. §§ 5927–5949, requires that when there is a complaint or motion to compel arbitration, the matter should proceed to arbitration unless there is a bona fide dispute about the existence of the agreement to arbitrate. Thus, 14 M.R.S.A. § 5928 provides, in pertinent part:

1. Application. On application of a party showing an agreement described in section 5927 and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

2. Stay of Proceedings. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

■ [¶ 13] Here, there is no dispute that there is an agreement to arbitrate. Where there is no dispute about the existence of an agreement to arbitrate, Maine's " 'broad presumption favoring substantive arbitrability' " governs further consideration of the action. *V.I.P., Inc. v. First Tree Dev., LLC,* 2001 ME 73, ¶ 4, 770 A.2d 95, 96 (quoting *Roosa v. Tillotson,* 1997 ME 121, ¶ 3, 695 A.2d 1196, 1197). There is, however, no Maine authority addressing the extent to which the trial court may consider whether the claims that a party seeks to arbitrate are barred by the doctrine of res judicata before sending a matter to arbitration.

[¶ 14] Section 5928 establishes that the responsibility to determine the substantive arbitrability of a dispute rests with the court, not the arbitrator. The court is directed to accomplish this through a summary process: "[T]he court shall proceed *summarily* to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." 14 M.R.S.A. § 5928(1) (emphasis added). The term " 'summarily' . . . has been defined to mean that a trial court should act expeditiously and without a jury trial to determine whether a valid arbitration agreement exists." UNIF. ARBITRATION ACT § 7, 7 (part I) U.L.A. 17 cmt. (Supp.2003).

[¶ 15] This is precisely the course followed by the Superior Court in this case. The court employed the summary process established by M.R. Civ. P. 56 and concluded that the dispute was not subject to arbitration. It reached this conclusion not because Macomber's substantive claims that the Tweedies breached the 1996 agreement were outside the scope of the parties' arbitration agreement, but rather because the parties' agreement to arbitrate the claims had been superseded by operation of the doctrine of res judicata as a consequence of a final judgment of a Maine court in a separate proceeding.

■ [¶ 16] Although the broad presumption of arbitrability is a hallmark that must guide our efforts when we seek to interpret and enforce arbitration agreements, it is not irrebuttable. Moreover, it is not intended to afford a litigant the opportunity to use arbitration to revisit a dispute that has been previously resolved. In the absence of an opportunity for a party to be heard on the affirmative defense of res judicata in a summary judicial proceeding,

the presumption of arbitrability would in many instances be rendered virtually irrebuttable because that party would be compelled to arbitrate the issue of res judicata along with all of the other issues previously litigated between the parties. Courts do not review an arbitrator's ruling on questions of law. *See* 14 M.R.S.A. § 5938(1)(A)-(F) (enumerating grounds for vacating an arbitration award); *Pelletier & Flanagan, Inc. v. Me. Court Facilities Auth.*, 673 A.2d 213, 215 (Me.1996) (ruling that a party seeking to vacate an arbitration award "has the burden of demonstrating one of the specific statutory grounds requiring the court to vacate the award" set forth in section 5938); *Sholar Bus. Assocs. v. Davis*, 138 N.C.App. 298, 531 S.E.2d 236, 239 (2000) (ruling that "[b]ecause an arbitrator is not bound by substantive law or rules of evidence, an award may not be vacated merely because the arbitrator erred as to law or fact"); *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 125 Pa.Cmwlth. 625, 558 A.2d 163, 164 (1989) (ruling that an error of law that does not exceed the powers and authority of an arbitrator is not grounds for reversing award); *Schnurmacher Holding, Inc. v. Noriega*, 542 So.2d 1327, 1328–29 (Fla.1989) (ruling that courts lack authority to vacate an arbitration award absent a statutory ground for doing so and, moreover, the statutory ground that the arbitrator exceeded his or her power does not include the arbitrator's departure from "accepted rule of law").

■ [¶ 17] In *Saga Communications, Inc. v. Voornas*, 2000 ME 156, ¶ 20, 756 A.2d 954, 962, we upheld the entry of a summary judgment denying arbitration on the basis of the affirmative defense of waiver. The plaintiff was deemed to have waived its right to arbitrate by having filed a complaint seeking to enforce limitations on employment and competition stated in an agreement with the defendant, followed by two separate motions seeking temporary restraining orders, before amending its complaint to seek an order compelling arbitration. *Id.* ¶¶ 4, 6, 17, 756 A.2d at 957, 961. Here, Macomber sought relief based on the parties' 1996 agreement by actively participating in the foreclosure proceeding and the unsuccessful appeal that followed. His participation in the proceeding was no less substantial than the actions of the plaintiff in *Saga Communications*. Although waiver is based on precepts different than the affirmative defense of res judicata, the rationale for having the court, in the first instance, determine whether either waiver or res judicata overcome the presumption of arbitrability of a dispute is the same: Courts are better suited to determine the legal consequences of prior judicial proceedings and are reposed with inherent authority to control their dockets and promote judicial economy.

[¶ 18] In contrast with our holding in *Saga Communications*, in *Lewiston Firefighters Ass'n v. City of Lewiston*, 354 A.2d 154, 167–68 (Me.1976), we held that the affirmative defense of laches should be decided by an arbitrator rather than the court:

> [A] claim of laches has a degree of uniqueness because it is cognizable only in equity as addressed to the Chancellor's "conscience" . . . . [and] the substantive subject-matter of a laches contention projects no distinctive, or difficult, concepts of law. . . . [N]othing in the substantive content of a laches claim precipitates any matter of important public policy which should prohibit the parties to a collective bargaining agreement from including, as they may deem appropriate, laches questions among those finally to be decided by arbitration.

[¶ 19] Unlike the affirmative defense of laches considered in *Lewiston Firefighters Ass'n*, res judicata is not addressed to the court's conscience, and it is a distinctive concept of law that is often difficult to apply. Res judicata is distinguished from laches by the degree to which the former doctrine embodies important questions of public policy as a key determinant of the degree of finality afforded the judicial process. Res judicata has been characterized as "serv[ing] vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. . . . It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts . . . ." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (internal quotations omitted).[4]

[¶ 20] The broad presumption favoring the substantive arbitrability of disputes is in no manner diminished by a court's threshold determination in a summary judicial proceeding that arbitration of the dispute is or is not barred by a prior judgment. We therefore conclude that the Superior Court did not err by entertaining the Tweedies' affirmative defense of res judicata as part of the summary hearing process authorized by 14 M.R.S.A. § 5928(1).

## B. Res Judicata

[¶ 21] Macomber contends that even if the court properly reached the issue of res judicata, it erred when it concluded that his breach of contract claims are barred by the earlier foreclosure proceeding."[5]

[¶ 22] We have long recognized that the doctrine of res judicata has two prongs:

The doctrine of *res judicata* is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once. The doctrine has developed two separate components, issue preclusion and claim preclusion. Issue preclusion, also referred to as collateral estoppel, prevents the reliti-

---

4. Courts of other jurisdictions that have addressed this question have found that the affirmative defense of res judicata may be considered by a court prior to determining whether the parties must participate in arbitration. *See Bank of Santa Fe v. Marcy Plaza Assocs.*, 131 N.M. 537, 40 P.3d 442, 446 (App. 2001) (in holding that requisites necessary to prove res judicata were not present in case, the court assumed but did not decide that res judicata, like collateral estoppel, applies to prior arbitration awards, barring subsequent litigation); *Kelm v. Kelm*, 92 Ohio St.3d 223, 749 N.E.2d 299, 302 (2001) (noting that de novo review of arbitration awards destroys parties' expectations that those awards will not be disturbed); *Baker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 821 So.2d 158, 163–64 (Ala.2001) (quoting *In re Y & A Group Sec. Litig.*, 38 F.3d 380, 382 (8th Cir.1994), for the proposition that " '[n]o matter what, courts have the power to defend their judgments as res judicata, including the power to

enjoin or stay subsequent arbitrations' "); *TLT Constr. Corp. v. A. Anthony Tappe and Assocs.*, 48 Mass.App.Ct. 1, 716 N.E.2d 1044, 1052 (1999) (ruling that an arbitration award, because it can be enforced as any other judgment, imposes a res judicata bar on subsequent litigation of identical issues); *Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B and C*, 251 Va. 417, 468 S.E.2d 894, 903 (1996) (holding that court is to decide preclusive effect of prior arbitration proceeding on claims asserted in subsequent arbitration proceeding).

5. Macomber also asserts that arbitration should be compelled because the parties had already "submitted" the claim to arbitration based on their efforts in 1998 and 2001 to schedule arbitration. Neither effort, however, resulted in the commencement of an arbitration hearing or the formal notices that precede such hearings. *See* 14 M.R.S.A. § 5931 (2003).

gation of factual issues already decided if the identical issue was determined by a prior final judgment, and ... the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding. Claim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action.

*Machias Sav. Bank v. Ramsdell,* 1997 ME 20, ¶ 11, 689 A.2d 595, 599 (internal citations and quotations omitted). The collateral estoppel prong of res judicata is focused on factual issues, not claims, and asks whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue or issues it wishes to litigate again in a subsequent proceeding. We have, for example, recognized that the determination of an issue by an administrative body in a licensing proceeding can collaterally estop a party from relitigating the same factual issue in a subsequent judicial proceeding, notwithstanding the fact that the two proceedings offer substantially different remedies. *Cline v. Me. Coast Nordic,* 1999 ME 72, ¶¶ 10–13, 728 A.2d 686, 688–89 (holding that collateral estoppel doctrine barred declaratory action by holders of fishing weir license where administrative proceeding determined that an aquaculture lease did not unreasonably interfere with fishing); *see also Button v. Peoples Heritage Sav. Bank,* 666 A.2d 120, 122–23 (Me.1995) (holding that collateral estoppel barred contract claim in Superior Court where Probate Court had previously decided against plaintiff on issues he would have to prove to prevail in Superior Court action); *Peterson v. Town of Rangeley,* 1998 ME 192, ¶¶ 11–12, 715 A.2d 930, 933 (ruling that collateral estoppel doctrine is applicable in administrative proceedings, though it is applied sparingly in zoning matters); *Town of N. Berwick v. Jones,* 534 A.2d 667, 670–71 (Me.1987) (holding that town planning board determinations should be given res judicata effect where issues are fully litigated in process featuring the essential attributes of adjudicative proceedings).

[¶ 23] Macomber relies on the limited nature of foreclosure proceedings to assert that the foreclosure judgment cannot have res judicata effect in this proceeding. His reliance is misplaced. The species of res judicata generated by the procedural history of this litigation is collateral estoppel, or issue preclusion, and not claim preclusion. The Superior Court ruled that "the *issues* as set out in Plaintiff's complaint were resolved in earlier litigation." (emphasis added) Accordingly, Macomber is precluded from relitigating the Tweedies' alleged breach of the 1996 agreement in this proceeding if he had a fair opportunity and incentive to present the identical issue in the earlier foreclosure proceeding and the issue was actually decided.

[¶ 24] Although the record demonstrates that Macomber had a fair opportunity to present the issue of the Tweedies' alleged breach of the 1996 agreement in the foreclosure proceeding before the District Court, it does not establish whether the issue was actually decided. The District Court's order addressed Macomber and DeSimone's request for equitable relief by stating that "no evidence of fraud was introduced at the hearing nor was there any other evidence warranting an order sounding in equity. Therefore the motion is denied." This excerpt does not address whether the equitable relief sought by Macomber and DeSimone was denied because of their failure to prove the Tweedies' breach of the contract, or for a different

reason specific to an award of remedies "sounding in equity."

[¶ 25] Collateral estoppel arises "only if the identical issue necessarily was determined by a prior final judgment." *Button,* 666 A.2d at 122 (internal quotations omitted). A party asserting collateral estoppel has the burden of demonstrating that the specific issue was actually decided in the earlier proceeding. 18 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, § 4420, at 516–18 (2d ed.2002). Because it is not possible to discern whether the issue of the Tweedies' breach of the parties' contract was actually decided in the foreclosure proceeding, the Superior Court erred when it concluded that the foreclosure judgment collaterally estopped the relitigation of that issue in this proceeding.

The entry is:

Judgment vacated, and remanded for entry of an order compelling arbitration pursuant to 14 M.R.S.A. § 5928(1) (2003).