MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2018 ME 105
Docket:      Ken-17-478
Argued:      June 14, 2018
Decided:     July 24, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

TOWN OF MOUNT VERNON

v.

JAMES LANDHERR et al.

SAUFLEY, C.J.

[¶1]  James Landherr and Valerie Center, whom we refer to as the landowners, appeal from a judgment entered by the District Court (Waterville, *Stokes, J.*) in favor of the Town of Mount Vernon on its land use violation complaint filed pursuant to 30-A M.R.S. § 4452 (2017) and M.R. Civ. P. 80K.  The dispute between the landowners and the Town centers on a relatively large generator that the landowners had installed on their small lot on Minnehonk Lake before seeking a permit or a variance.

[¶2]  Prior to the proceedings before us, on appeal from a decision of the Town's code enforcement officer, the Mount Vernon Board of Appeals determined that the landowners' generator was a "structure" pursuant to the Town's Land Use Ordinance.  When the landowners did not appeal that decision

2

and yet failed to comply with the Town's request for the removal of the generator because that structure was placed on the lot in violation of the Ordinance, the Town filed a land use violation complaint. The court determined that the previous decision of the Board of Appeals was res judicata as to whether the generator met the definition of "structure" in the Town's Land Use Ordinance and found the landowners in violation of the Ordinance, assessing a penalty and attorney fees. We affirm the judgment of the court.

## I.  BACKGROUND

[¶3]  In early 2015, after experiencing a number of power outages, the landowners installed a generator on their lakefront property. The generator was set on a concrete pad and was connected to the house by underground electric and gas lines. The landowners did not consult with the Town or apply for a permit before installing the generator.

[¶4]  The Town's Land Use Ordinance requires that all new and accessory "structures" be set back at least 100 feet from the normal high-water line of any great pond within the shoreland zone. Mount Vernon, Me., Land Use Ordinance § 5(C)(2)(a) (June 13, 2015).[1]  The Ordinance further provides that "[n]o person

---

[1]  The Ordinance defines "structure" as "[a]nything temporarily or permanently located, built, constructed or erected for the support, shelter or enclosure of persons, animals, goods or property of any kind, together with anything constructed or erected on or in the ground." Mount Vernon, Me.,

shall engage in any activity, land use, or placement of a structure . . . requiring a permit in the district in which such activity or use would occur . . . without first obtaining a permit." *Id.* § 11(B). There is no dispute that the landowners' generator was placed less than 100 feet from the lake.

[¶5] On July 15, 2015, the Town's CEO sent a letter to the landowners advising them that "[a]ll structures located in a shoreland district require a permit" and stating that a generator on their property appeared to be in violation of the Ordinance's setback requirements. The letter ordered them to either remove the generator or apply for a permit on or before August 10, 2015.

[¶6] The landowners filed an application for an after-the-fact permit to maintain the generator in its location. By letter dated August 12, 2015, the CEO denied the permit, stating that "the structure is nonconforming from side, front and rear setbacks on the lot." The CEO provided the landowners with instructions for appealing his decision and applications for hardship and administrative variances. They timely appealed the CEO's denial of their permit to the Mount Vernon Board of Appeals, arguing that their generator was not a "structure" as defined by the Town's Land Use Ordinance.

---

Land Use Ordinance § 3 (June 13, 2015). "Accessory structure" is defined as a "structure 100 square feet or greater, except in the shoreland zone, where there is no minimum size." *Id.*

4

[¶7]  In September 2015, the Board of Appeals held a public hearing on the appeal.  The landowners attended the hearing, where they were provided an opportunity to argue their position.  At the conclusion of the hearing, the Board of Appeals unanimously voted to uphold the CEO's decision and issued a written decision concluding that the generator was a "structure" after finding that "the generator sits on a pad, has underground propane pipes and [a] power line, and was intended to remain in place."  The landowners did not appeal the decision of the Board of Appeals to the Superior Court.[2]  *See* 30-A M.R.S. § 2691(3)(G) (2017); M.R. Civ. P. 80B.

[¶8]  Approximately one month later, the CEO sent a letter requesting that the landowners agree in writing to either remove the generator by November 30, 2015, or incur a penalty for every day after November 30 that the generator remained in violation of the Ordinance.  On November 11, 2015, after the landowners failed to respond to his letter and the time for filing an appeal had expired, the CEO sent them a notice of violation pursuant to 30-A M.R.S. § 4452, requiring the landowners to sign and return a consent agreement, which would require that they pay a $1,000 fine and remove the

---

[2]  The landowners also applied for a variance, which the Board of Appeals denied after a public hearing.  They do not appeal from that decision.

generator by November 30. The notice stated that they "<u>must</u> notify the Code Enforcement Officer when corrective action is taken so that a compliance check may be made" and warned that a failure to comply would "result in court action." (Emphasis in original.) The landowners responded with an email to the CEO, acknowledging the notice of violation and stating that they planned to make the generator mobile, but that it was unlikely that the work would be completed by November 30, and that they would update the CEO when the expected date of completion became known. They did not have any further communication with the CEO.

[¶9] On February 3, 2016, the Town filed a land use citation and complaint in the District Court pursuant to 30-A M.R.S. § 4452 and M.R. Civ. P. 80K, alleging that the generator had not been removed as required by the notice of violation and order for corrective action dated November 11, 2015. The Town sought a permanent injunction and order for the removal of the generator as well as attorney fees and civil penalties. The landowners denied the allegations and the matter was set for trial.

[¶10] Prior to trial, the Town moved for summary judgment on the issue of whether the generator was a "structure" as defined by the Town's Land Use Ordinance, *see* M.R. Civ. P. 56, asserting that the decision of the Board of Appeals

6

was a valid, final judgment and that relitigating the matter was barred by principles of res judicata, *see* 30-A M.R.S. § 2691(4) (2017). Landherr and Center objected.

[¶11] The court held a one-day trial in April 2017. After hearing argument, the court granted the Town's motion for summary judgment. Because the landowners did not dispute that the generator was located within 100 feet of a great pond in violation of the Town's Land Use Ordinance, the trial proceeded to the dispositional phase during which the landowners asserted that the Town should be equitably estopped from prosecuting the violation and that the violation was de minimis. On August 21, 2017, the court entered a judgment in favor of the Town. The court found that the landowners failed to present sufficient evidence to prove their equitable defenses, ordered them to pay a minimal civil penalty of $500, and awarded the Town attorney fees and costs totaling $2,264.73. The landowners timely filed a notice of appeal. *See* 14 M.R.S. § 1901 (2017); M.R. App. P. 2A, 2B.

## II. DISCUSSION

[¶12] The landowners contend that the court erred by concluding that the decision of the Board of Appeals precluded them from relitigating the issue of whether their generator was a "structure" as defined by the Town's Land Use

Ordinance, arguing that summary judgment was inappropriate in a Rule 80K proceeding and that they were entitled to a de novo hearing on the merits. They urge us to determine that, as a matter of judicial policy, it would be better for the public to be able to litigate issues anew in any land use violation litigation.

[¶13]  The effect of a prior judgment on a present action is a question of law that we review de novo. *State v. Thompson*, 2008 ME 166, ¶ 8, 958 A.2d 887. Preliminarily, we reject the landowners' contention that Rule 80K prohibits the use of summary judgment in land use violation proceedings.  *See* M.R. Civ. P. 80K(a) (stating that "[e]xcept as otherwise provided in this rule, [the Rules of Civil Procedure] shall apply to proceedings in the District Court involving alleged violations of land use laws and ordinances").

[¶14]  We note, however, that the Town was not required to file a motion for summary judgment in order to have the court apply the decision of the Board of Appeals.  The issue could have been addressed in a more straightforward manner by a request from the Town that the court take judicial notice of that decision.  *See* M.R. Evid. 201; *see also Manguriu v. Lynch*, 794 F.3d 119, 121 (1st Cir. 2015) (noting that courts may take judicial notice of agency determinations); *Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250, 255-56 (3d Cir. 2000) (same); *Opoka v. INS*, 94 F.3d 392, 394-95 (7th Cir. 1996)

(citing cases from several federal circuit courts of appeals supporting the "well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice"); *cf. United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)))).

[¶15] Ultimately, regardless of the vehicle by which the issue was brought to the court, the court correctly determined that the decision of the Board of Appeals was binding on the landowners. An issue of law or fact litigated and decided in a valid, final judgment is conclusive in a subsequent legal proceeding between the same parties. *Town of N. Berwick v. Jones*, 534 A.2d 667, 669 (Me. 1987). That form of res judicata known as "collateral estoppel" or "issue preclusion" prevents the relitigation of issues already decided "if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 (alteration omitted) (quotation marks omitted). The doctrine of res

judicata applies to decisions made by municipal bodies as well as to judgments issued by the court. *See* 30-A M.R.S. § 2691(4) ("Any such decision that is not timely appealed is subject to the same preclusive effect as otherwise provided by law."); *Jones*, 534 A.2d at 670 (establishing that res judicata applies to "a final adjudication in an administrative proceeding before a quasi-judicial municipal body").

[¶16]  Each of the elements of issue preclusion was established in this case. *See Macomber*, 2003 ME 121, ¶ 22, 834 A.2d 131.  First, the landowners had a fair opportunity and incentive to litigate the issue of whether their generator was a "structure" before the Board of Appeals.  A review of the minutes of the public hearing reveals that they had notice and an opportunity to be heard.  They did, in fact, advocate assertively for their position.  Second, after the Board of Appeals issued its decision and the period for filing a Rule 80B appeal expired without an appeal, the Board's decision became a valid, final judgment.  *See* 30-A M.R.S. § 2691(3)(G), (4).  Third, the issue before the Board of Appeals—whether the landowners' generator is a "structure" as defined by the Town's Ordinance—is the identical issue that they sought to litigate in the District Court in the land use violation trial.  Based on these facts—which the landowners do not dispute—and for these reasons, the court

did not err by concluding that they were precluded from relitigating the issue of the generator as a structure pursuant to the Ordinance.[3]

[¶17]   Finally, the landowners' argument that the application of the principles of res judicata in these circumstances will make municipal land use compliance more difficult and more expensive for landowners is not persuasive.   To the contrary, knowing the Town's interpretation of the Ordinance *before* the initiation of a land use violation complaint pursuant to Rule 80K allows a landowner to take corrective action before risking the potentially draconian penalties flowing from the filing of a land use violation complaint, if the landowner is willing to work with the Town toward a solution. *See* 30-A M.R.S. § 4452(3) (allowing penalties to be assessed "on a per-day basis").

[¶18]   Pursuant to the final decision of the Mount Vernon Board of Appeals, the generator on Landherr and Center's property is a structure.   It must meet the requirements of Mount Vernon's Land Use Ordinance regarding structures.   It does not.   The court did not err in finding that the landowners were in violation of the Ordinance and assessing a modest penalty.

---

[3]   The landowners also argue that the court erred by finding that they had failed to carry their burden of proof in establishing their equitable defenses.   We are not persuaded by their argument and do not address it further.

The entry is:

Judgment affirmed.

---

Robert E. Sandy, Jr., Esq. (orally), Sherman & Sandy, Waterville, for appellants James Landherr and Valerie Center

David M. Sanders, Esq. (orally), Sanders & Hanstein, Farmington, for appellee Town of Mount Vernon

Waterville District Court docket number CV-2016-11
FOR CLERK REFERENCE ONLY