STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER DOCKET
Location: Portland
Docket No. BCD-CV-2018-47

KIRK FRANKLIN and
STACY FRANKLIN,

       Plaintiffs

     v.

DAVID DOUIN

       Defendant

PORTLAND HARBOR LIGHTS,
LLC

       Party-in-interest

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER DENYING PLAINTIFFS' SECOND
MOTION FOR LEAVE TO FILE
PLAINTIFFS' FIRST AMENDED
AMENDED (sic) COMPLAINT (VERIFIED)**

Plaintiffs commenced this litigation back on April 26, 2018, with a simple, straightforward Complaint for dissolution, which seemed headed for prompt resolution.[1]  As reflected in the Court's Hearing/Conference Report dated October 5, 2018, the parties represented to the Court at a conference held on October 3, 2018 that they "agreed to explore the possibility" of a resolution that would allow the parties "to part ways and to resolve any financial disputes in a manner that minimizes legal costs and expedites resolution of the case."  The Court granted an extension of certain deadlines "[g]iven that the parties are exploring a way to short cut the litigation . . . ."  By Order dated October 15, 2018, the Court ordered the parties to use the extension to "meet and

[1] Defendant counterclaimed, and Plaintiffs have a pending Motion to Dismiss the counterclaims.  Pursuant to the revised Scheduling Order, Defendant will have the opportunity to oppose the Motion to Dismiss.  However, given the Court's Order on Plaintiffs' Second Motion for Leave, Defendant may wish to evaluate whether opposing the Motion to Dismiss the counterclaims makes sense.

1

confer in an effort to settle or reduce the issues of the case," and to facilitate "winding up the affairs of (and dissolving) Portland Harbor Lights, LLC and liquidating all assets."

The parties did meet and confer, and ultimately agreed to a very fine Memorandum of Understanding ("MOU") that laid out a sensible process for selling the one asset involved in this case, a condominium owned by Portland Harbor Lights, LLC ("PHL"). At the request of the parties, the Court than stayed the case in order to allow the MOU process to unfold. Although the parties came close to undermining their own MOU, see this Court's Order dated May 16, 2019, ultimately the parties complied with the MOU, the condo was sold, and the proceeds escrowed pending resolution of this case. Indeed, Plaintiffs' Motion for Leave to Amend its Complaint, filed on September 11, 2018, was stayed to allow the parties to focus on selling the condo pursuant to the MOU.

Upon sale of the only asset involved in this case, one would have expected the parties to resume efforts to get at a fair disbursement of escrowed monies in as cost effective and expeditious manner as possible, along with simply winding up of the LLC. That does not appear to be what happened. Instead, Plaintiffs pursued their Motion for Leave to Amend. The Motion sought a disproportionate expansion of the case, rather than a focused tweak of the Complaint to facilitate a cost effective resolution.

By Order dated September 18, 2019, this Court denied Plaintiffs' Motion for Leave to Amend their original Complaint. The Court concluded the proposed amended pleading represented an unwarranted expansion of this relatively straightforward case, especially given that the one asset at stake (the condominium) was sold at auction pursuant to the parties' MOU. The Court's denial, however, was without prejudice, in order to allow Plaintiffs to "update" the Complaint "to reflect current developments," e.g., the sale of the condo.

Plaintiffs apparently misunderstood the Court's Order, because they have once again moved to amend the Complaint in a manner that would disproportionately and unreasonably expand this litigation well beyond its modest beginnings, especially in light of the sale of the condo pursuant to the MOU. This case has now been pending for over eighteen months, and the delays and extensions were specifically permitted by the Court to facilitate the parties' original goals of a cost effective and expeditious litigation—not to facilitate or encourage senseless expansion of the litigation.

"A motion to amend a pleading pursuant to Rule 15 is committed to the sound discretion of the trial court . . . ." *Bangor Motor Co. v. Chapman*, 452 A.2d 389, 392 (Me. 1982). Rule 15 provides that, after a responsive pleading has been served, leave to amend a party's pleading "shall be freely given when justice so requires." M.R. Civ. P. 15(a). The purpose of Rule 15 is to achieve the goals of Rule 1, which are the "just, speedy and inexpensive determination of every action." *Chapman*, 452 A.2d at 392. Accordingly, justice does not require granting leave to amend when there is good reason to deny the motion, such as undue delay, bad faith, dilatory motive, undue prejudice, futility of amendment, or other reasons. *Id.*

In this case, as explained above and in the Court's prior orders, granting the motion would contravene the just, speedy and inexpensive determination of this action; would lead to undue delay in resolving the case; and would contravene the reason the Court granted the various extensions and stays in the first place.[2] The Court is not at this juncture willing to pick and choose which, if any, of Plaintiffs' numerous proposed new counts should be permitted. Plaintiffs have now had two opportunities to amend their Complaint in a reasonable fashion to update the

---

[2] Additionally, when "a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend." *Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994). Here, most if not all of the proposed new counts would be subject to a motion to dismiss (as are Defendant's counterclaims), for the reasons set forth in the two Opposition briefs.

Complaint, and have overreached on both occasions. Moreover, the existing pleadings are sufficient to get to the nub of the issue, which is how the funds should be disbursed following the sale of the condo, and winding up of the LLC. *See* 31 M.R.S. § 1595(2), which allows the Court in a dissolution proceeding to order other remedies in addition to the dissolution. For all of these reasons, the Motion is Denied.

After all the pending motions are decided, the Court anticipates scheduling a status conference to discuss sending the parties back to ADR in the wake of all the developments over the last eighteen months.

Pursuant to M.R.Civ.P. 79(a), the clerk is hereby directed to incorporate this order by reference on the docket.

So Ordered.


Date:  _November 7, 2019_____          _____/s_____

                                          Hon. Michael A. Duddy
                                          Maine Business and Consumer Court

4

KIRK FRANKLIN, et al.,

      Plaintiffs,

      v.

DAVID DOUIN, et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)

COMBINED ORDER DENYING
PLAINTIFFS' MOTION TO VACATE
STAY, DENYING DEFENDANT'S
MOTION FOR TEMPORARY
RESTRAINING ORDER, AND
ORDERING COMPLIANCE WITH
THE PURPOSE OF THE MOU

In this action for the dissolution of a Maine limited liability company, both sides have moved for the Court to act on disputes that have arisen during a nine-week stay ordered by this Court to accommodate an auction sale of the LLC's sole asset: a condominium unit. Finger pointing and accusations by both sides now put the agreed-upon auction at risk. The Court thus disposes of the motions in a manner designed to prevent the parties' contentious conduct from undermining the agreed-upon sale of the asset. As further set forth below, the Court requires the Franklins and Mr. Douin to cooperate to auction off the asset, and then they can pursue their claims against one another.

BACKGROUND

Mr. Douin owns 50% of the membership interest of Portland Harbor Lights, LLC ("PHL" or the "LLC"). The Franklins each own a 25% membership interest and thus collectively own the remaining 50% of the LLC. The LLC has a single asset: a condominium unit located at 11 Sheridan Street, Unit 3, Portland, Maine (the "Condo"). On March 22, 2019, pursuant to a consented-to motion, this Court entered an order staying the case for nine weeks from that date. The stay thus expires May 24, 2019. The case was stayed to allow the parties time to auction off the Property pursuant to a Memorandum of Understanding ("MOU") entered into by the parties on March 8,

1

2019. (Pl's Mot. Vacate Stay 2; Douin Aff. ¶¶ 18, 21.) The MOU identified Tranzon Auction Properties ("Tranzon") as the auctioneer who would conduct a public auction to liquidate the Property. Tranzon requires PHL to pay for marketing costs associated with its services. (MOU Sched. A ("Tranzon Listing Agreement") § 5.) The parties now quarrel over how to pay Tranzon to conduct the auction.

DISCUSSION

The Franklins filed a Motion to Vacate Stay because they allege Mr. Douin withdrew money from PHL's bank account without their authorization, and there are now insufficient funds in the PHL account to pay for Tranzon. Whatever the merits of the Franklins' challenge to Mr. Douin's withdrawal of PHL funds, the challenge is distinct from the reason the stay was entered and the ends to be served by the MOU. The purpose of the MOU is laid out in the "Recitals" section thereof: "The Parties have agreed to address the liquidation of the Condo asset through an auction sale as detailed herein." (MOU, Recitals ¶ 3.) The MOU expressly provides: "The Parties reserve to themselves and do not waive any and all direct and/or derivative rights or claims against each other and/or against PHL." (MOU § 4.) The MOU further provides that: "In consenting to the sale of the Condo by auction as detailed herein, the Parties reserve and do not waive any rights or claims against each other and/or against PHL, said claims to be mediated . . . ." (MOU § 7.) Section 8 of the MOU, titled "No Admission of Liability," expressly provides that the MOU is not an admission of liability or wrongdoing by either party. (MOU § 8.) In other words, the Franklins can challenge the allegedly improper withdrawal later—after the Condo is auctioned and the proceeds escrowed.[1] The Franklins' motion is therefore denied.

---

[1] As described above, if the Franklins together are considered one ownership unit, the ownership of PHL is split 50/50, and there is no majority owner. Although the matter has not been fully briefed to this Court, and thus the Court is not at this time taking a position, it may be that no one owner has the unilateral authority to cause the expenditure of PHL monies. To the extent use of funds in PHL's bank account is causing concerns in this case, any

2

Mr. Douin has filed a Motion for TRO to force the Franklin's comply with the MOU and auction off the Condo. The problem with Mr. Douin's motion is that it was the wrong motion to file, because he cannot satisfy the applicable standard. Injunctive relief is only available where a movant can show the following: 1) that it will suffer irreparable injury if the relief is not granted; 2) such injury outweighs any harm which granting the relief would inflict on another party; 3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and 4) the public interest will not be adversely affected by granting the relief. *Bgr. Hist. Track, Inc. v. Dep't of Agric.*, 2003 ME 140, ¶ 9, 837 A.2d 129. "A temporary restraining order may be granted . . . only if . . . it clearly appears from specific facts shown by affidavit . . . that immediate and irreparable injury, loss, or damage will result to the applicant . . . ." M.R. Civ. P. 65(a). *See also Town of Charleston v. Sch. Admin. Dist. No. 68*, 2002 ME 95, ¶ 6, 798 A.2d 1102 ("Proof of irreparable injury is a prerequisite to the granting of injunctive relief.") (citation omitted). Here, Mr. Douin cannot show irreparable injury, and so his motion is denied.

The MOU includes a contractual provision that expressly gives a party the right to seek an order from this Court "on an expedited basis" compelling another party to comply with the MOU. Specifically, section 9 of the MOU includes the following language: "If any of the Parties hereto fail to cooperate relative to the sale of the Condo (*i.e.*, refuse to execute the transfer deed to the successful bidder at the auction), the remaining parties may seek an order from the Business Court on an expedited basis to compel such compliance . . . ." (MOU § 9.) Under the Court's inherent authority to supervise the Stay it issued in this case—a stay the Court granted at the request of the parties specifically for the purpose of implementing the MOU—the Court interprets the Franklins' motion to vacate stay, and Mr. Douin's motion for a TRO, as in effect a motion to compel

party can move for an interim order from this Court requiring Court approval for any use of PHL funds for which the parties do not mutually agree.

compliance with the purpose of the MOU.[2] *See Macomber v. Macquinn-Tweedie*, 2003 ME 121, ¶ 17, 834 A.2d 131 (courts "are reposed with inherent authority to control their dockets and promote judicial economy"). The Court in effect grants that motion, and based on its inherent authority to promote judicial economy orders the following:

The Franklins, as collectively 50% owners of PHL, and Mr. Douin owning the other 50%, shall each immediately pay to Tranzon one half of the costs necessary for Tranzon to promptly auction the Condo in accordance with the MOU.[3] Notwithstanding this Order, all parties retain all arguments they have against and among each other for damages, reimbursements, accountings, and so forth.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

SO ORDERED.


Dated:_May, 16, 2019_____            ____/s_____
                                      Michael A. Duddy
                                      Judge, Business and Consumer Court

---

[2] For the purpose of facilitating prompt resolution of disputes related to implementation of the MOU, the Court will not entertain further written motions regarding the MOU and the Stay. Instead, until the Condo is auctioned off and the funds escrowed, the Court requires the parties to follow Rule 26(g) procedures with regard to MOU and Stay disputes. The parties shall first try to work out their disagreements, and if unsuccessful, any party can ask the Clerk to set up a conference call with the Court. Counsel will be permitted to make oral motions or otherwise verbally present their issues and arguments to the Court during the conference call.

[3] If Tranzon needs additional time beyond May 24, 2019, to complete the auction process, any party can ask the Court to extend the Stay, using the procedures described in fn. 2, *infra*.