# United States Court of Appeals
## For the First Circuit

No. 13-1913

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

Plaintiff, Appellee,

and NATIONAL CASUALTY COMPANY,

Plaintiff,

v.

ONEBEACON AMERICAN INSURANCE COMPANY,
EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY,
AMERICAN EMPLOYERS INSURANCE COMPANY,
THE EMPLOYERS' FIRE INSURANCE COMPANY,
THE NORTHERN ASSURANCE COMPANY OF AMERICA,
and EMPLOYERS LIABILITY ASSURANCE CORPORATION,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Howard, Circuit Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Mark C. Kareken for Appellant.

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

Michael A. Knoerzer, with whom Kevin J. O'Connor, Clyde & Co. US LLP, and Hermes, Netburn, O'Connor & Spearing were on brief, for Appellees.

---

February 26, 2014

---

**STAHL, <u>Circuit Judge</u>.** Plaintiffs National Casualty Company ("National Casualty") and Employers Insurance Company of Wausau ("Wausau") filed a petition for declaratory relief regarding the preclusive effect of a prior arbitration. Defendants OneBeacon American Insurance Company, Employers Commercial Union Insurance Company, American Employers Insurance Company, Employers' Fire Insurance Company, Northern Assurance Company of America, and Employers Liability Assurance Corporation (collectively "OneBeacon")[1] filed a motion to dismiss Plaintiffs' collateral estoppel claim and a cross-petition to compel arbitration. The district court granted OneBeacon's motion to dismiss and Wausau appealed. We affirm.

## I. Facts & Background

Between 1966 and 1986, OneBeacon had a program known as "Multiple Line Excess Cover" ("MLEC Program") under which it annually entered into reinsurance contracts ("MLEC Agreements") with various reinsurers. National Casualty, Wausau, and Swiss Reinsurance America Corporation ("Swiss Re") participated as reinsurers in the MLEC Program. Wausau entered into MLEC Agreements with OneBeacon in 1973 and 1974 that are identical in all relevant respects to OneBeacon's MLEC Agreements with Swiss Re from 1975 through 1980.

---

[1] Defendants describe themselves as "various OneBeacon entities."

In December 2007, OneBeacon demanded arbitration under its contracts with Swiss Re seeking reinsurance recovery for losses arising out of claims against OneBeacon by several policyholders. The arbitration panel decided in favor of Swiss Re, and the District Court of Massachusetts confirmed the award. In April 2012, OneBeacon demanded arbitration with Wausau and National Casualty under MLEC Agreements from 1971-74 and 1980-85 seeking coverage for a number of claims. According to Wausau, "[t]he demand included billings of approximately $100,000 to Wausau under the 1973-74 [MLEC Agreements] for the very same . . . claims OneBeacon arbitrated and lost against Swiss Re."

Following the demand for arbitration, OneBeacon, Wausau, and National Casualty entered into an "Agreement for the Consolidation of Arbitration," which combined the parties' arbitrations into a single proceeding. Subsequently, Wausau and National Casualty petitioned the District Court of Massachusetts for a declaratory judgment that the prior arbitration award between OneBeacon and Swiss Re had preclusive effect on the arbitration pending between OneBeacon and Wausau.[2] The district court denied the petition, holding that "the preclusive effect of a prior arbitration is a matter for the arbitrator to decide." Nat'l Cas.

---

[2] Wausau also raised several other issues before the district court that are not presently before us on appeal.

Co. v. OneBeacon Am. Ins. Co., No. 12-cv-11874, 2013 WL 3335022, at *8 (D. Mass. July 1, 2013). Wausau appeals.

## II. Analysis

The single issue on appeal is whether a dispute over the preclusive effect of a prior arbitration is arbitrable. More specifically, when an arbitration decision is confirmed by a federal court order, is the preclusive effect of that decision on a subsequent arbitration a matter for the federal court or the arbitrator to decide? Wausau offers two arguments against arbitrability in these circumstances.

First, it argues that federal courts have the exclusive authority to determine the preclusive effects of their judgments, so an arbitrator lacks the authority to determine the preclusive effect of a prior arbitration once it has been confirmed by a federal court. Second, Wausau argues that when the parties negotiated their arbitration agreement in the early seventies, the applicable case law did not hold that preclusion was an arbitrable issue. Thus, the parties could not have intended for the scope of their arbitration agreement to cover the preclusive effect of prior arbitrations. The first argument is unpersuasive and the second argument is waived.

## A. Enforcement of Court Orders Confirming Arbitration Awards

Section 2 of the Federal Arbitration Act ("FAA") provides that written agreements to submit disputes to arbitration "shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party who is seeking to compel arbitration must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011)). The issue before us relates only to the scope of the clause – whether it covers disputes over the preclusive effect of prior arbitrations.

The arbitration agreements in this case are broadly worded. They cover "any irreconcilable dispute between [the parties] in connection with" the MLEC Agreements. Thus, by their plain terms they would appear to include disputes over the preclusive effect of prior arbitrations. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp., 88 F.3d 129, 136 (2d Cir. 1996) (finding an arbitration clause with similar language "sufficiently broad to encompass disputes about what was decided in a prior arbitration"). Moreover, there is broad agreement among the circuit courts that the "effect of an arbitration award on future awards . . . is properly resolved through arbitration." Courier-Citizen Co. v. Bos. Electrotypers Union No. 11, 702 F.2d

273, 280 (1st Cir. 1983); see also Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc., 202 F.3d 965, 968 (7th Cir. 2000) ("[T]he preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider.") (internal quotation marks omitted); Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1132 (9th Cir. 2000) ("[A] res judicata objection based on a prior arbitration proceeding is a legal defense that, in turn, is a component of the dispute on the merits and must be considered by the arbitrator, not the court."); U.S. Fire Ins. Co. v. Nat'l Gypsum Co., 101 F.3d 813, 817 (2d Cir. 1996) ("[T]he issue-preclusive effect of a prior arbitration is arbitrable and so must be arbitrated."); Oil, Chem. & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Tex. Inc., 677 F.2d 492, 494 (5th Cir. 1982) (per curiam).

Wausau's argument rests entirely on the fact that in this case there is a federal court order confirming the prior arbitration award. Wausau offers a straightforward syllogism: (1) Section 13 of the FAA provides that an order confirming an arbitration award "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action," 9 U.S.C. § 13; and (2) enforcement of a federal judgment, including the determination of its preclusive effect, is the "exclusive province of federal courts"; therefore, (3) only federal courts have the authority to determine

the preclusive effect of an arbitration award after it has been confirmed by a court order. Any other conclusion, according to Wausau, would violate the unambiguous text of Section 13 placing orders confirming arbitration awards on equal footing with all other court orders.

The First Circuit has not addressed this issue. The district court relied on the Ninth Circuit's opinion in Chiron to conclude that judicial confirmation of an arbitration award "does not warrant deviation from the general rule that the preclusive effect of a prior arbitration is a matter for the arbitrator to decide." Nat'l Cas. Co., 2013 WL 3335022, at *8. We agree with the district court's conclusion.

The flaw in Wausau's logic is that a federal judgment confirming an arbitration award is distinct from the arbitration award itself. The federal judgment very rarely considers the merits of the arbitrator's decision. See UMass Mem'l Med. Ctr., Inc. v. United Food and Commercial Workers Union, 527 F.3d 1, 5 (1st Cir. 2008) ("[T]he district court's review of arbitral awards must be extremely narrow and exceedingly deferential. . . . [T]hat a reviewing court is convinced that the arbitrators committed error – even serious error – does not justify setting aside the arbitral decision." ) (internal citations and quotation marks omitted); Dennis v. Wachovia Sec., LLC, 429 F. Supp. 2d 281, 287 (D. Mass. 2006) ("[C]ourts have no business weighing the merits of the

grievance or considering whether there is equity in a particular claim." (quoting <u>Major League Baseball Players Ass'n</u> v. <u>Garvey</u>, 532 U.S. 504, 509-10 (2001))) (alteration in original) (internal quotation marks omitted). Under the FAA, the federal court's review of an arbitration decision serves two very limited purposes; it determines whether the decision should be vacated or amended on one of the specific grounds enumerated in Section 10(a),[3] and it provides a mechanism for enforcement, 9 U.S.C. § 13. Generally, that is the extent of the confirmatory order's substantive significance. <u>See</u> <u>Chiron Corp.</u>, 207 F.3d at 1133 ("[The FAA]

---

[3] Section 10(a) provides that:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a)

requires the court to enter judgment upon a confirmed arbitration award, without reviewing either the merits of the award or the legal basis upon which it was reached.")

A collateral estoppel analysis requires the court to determine whether "(1) the issues raised in the two actions are the same; (2) the issue was actually litigated in the earlier action; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was necessary to that judgment." Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012). That inquiry inherently involves an examination of the details of the prior arbitration; the arbitrator's path to reaching the decision on the merits determines the preclusive effect of the arbitration. But, as explained, a federal judgment confirming the arbitration award generally does not address the steps leading to the decision on the merits at all. Since these matters are outside of the purview of the court order confirming the arbitration decision, there is no reason why that order should give the federal court the exclusive power to determine the preclusive effect of the arbitration. The prerogative of the federal court to protect its own judgments does not need to extend beyond the scope of the judgment itself.

This conclusion does no violence to the text of Section 13 or the Congressional intent underlying it. Nor does it harm the federal court's power to enforce its own judgments. It simply

means that the federal court will protect its judgments within their proper bounds. For example, if a federal court, in enforcing an arbitration award, held that the arbitration was not fraudulent, and thus was enforceable, a subsequent arbitrator would not be able to decide to the contrary. But if a federal court has nothing to say about the merits of the arbitration decision that it confirms (which is almost always the case), then a subsequent arbitrator does not infringe on the prerogatives of the federal court by determining the preclusive effect of that arbitration decision. Therefore, we will not deviate here from the general rule that the preclusive effect of a prior arbitration is an arbitrable issue.

**B.      Doctrine at the Time of Contracting**

Wausau's second argument is that at the time the parties negotiated the MLEC Agreements, "the law then in existence – that became part of the reinsurance contract here – required that the question of the collateral estoppel effect of a federal judgment entered on an arbitral award would be decided by a court, not arbitrators." Wausau did not raise this argument before the district court. "[I]t is a virtually ironclad rule that a party may not advance for the first time on appeal either a new argument or an old argument that depends on a new factual predicate." Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003). By failing to raise the argument below, Wausau waived it.

Wausau attempts to avoid waiver by arguing that "[t]he law at the time of contracting is a long-standing maxim of contract interpretation. Since arbitrability, which requires contract interpretation, was before the District Court, Wausau has not transgressed the 'raise-or-waive' rule by addressing the point before this Court." This argument skirts absurdity. When a party places an issue as broad as "contract interpretation" before the court, it does not thereby preserve every argument that might fall under that rubric. This court has held repeatedly that "theories not squarely presented below typically cannot be advanced here." Medina-Rivera v. MVM, Inc., 713 F.3d 132, 141 (1st Cir. 2013) (emphasis added) (citing cases); Curet-Velazquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 53 (1st Cir. 2011). As we held in Curet-Velazquez, "[t]here is nothing sufficiently compelling about this case to warrant relaxation of such a fundamental rule." 656 F.3d at 53.

## III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court order. Costs to Appellee.