

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| PAUL D. MELNUK, | ) | No. ED108006 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Kristine A. Kerr |
| THOMAS J. HILLMAN, | ) | |
| | ) | |
| Appellant. | ) | Filed: January 28, 2020 |

### Introduction

Thomas J. Hillman appeals the trial court's denial of his motion to compel arbitration of claims for damages brought by Paul D. Melnuk, his former business partner. He argues the trial court erred in denying his motion to compel arbitration because two agreements between the parties contained delegation clauses requiring threshold questions of arbitrability be submitted to an arbitrator. He further argues Melnuk's claims for damages were not raised and their arbitrability was not decided in a prior arbitration. Alternatively, Hillman argues, even if the delegation clauses were invalid, the trial court erred in not finding Melnuk's claims should be arbitrated because they "touch[ ] matters covered by the parties' contract[s]." We find the trial court erred in denying Hillman's motion to compel arbitration. Accordingly, the trial court's order overruling Hillman's motion to compel arbitration is reversed. The trial court shall stay the case and order the parties to proceed to arbitration.

**Factual and Procedural Background**

Melnuk and Hillman were business partners who each owned a one-half interest in FTL Capital, LLC ("FTL Capital").[1] Melnuk and Hillman were the sole Members and Managers of FTL Capital. FTL Capital had an operating agreement ("Operating Agreement"), which included a "Buy and Sell Option" provision under which one Member could propose to sell his one-half interest in FTL Capital or buy the other Member's one-half interest in FTL Capital at a price in the proposal. The non-proposing Member could opt to be the buyer or the seller. On February 17, 2015, Melnuk submitted a written proposal to Hillman, offering to either buy Hillman's interest or sell his own interest in FTL Capital. On April 8, 2015, Hillman notified Melnuk he wished to purchase Melnuk's one-half interest in FTL Capital. On April 30, 2015, Melnuk and Hillman executed a "Membership Interest Buy/Sell Agreement of FTL Capital, LLC" ("Buy/Sell Agreement").

The Buy/Sell Agreement provided Hillman would pay Melnuk $23.3 million ("Purchase Price") for his one-half interest in FTL Capital. The Buy/Sell Agreement provided that, at the closing, Hillman would pay Melnuk an amount equal to 5% of the Purchase Price from funds held in escrow and execute and deliver a promissory note ("Promissory Note") for $22,135,000, subject to certain contingent liability adjustments. One such adjustment was for payments made to certain employees under the FTL Capital Phantom Option Plan ("Phantom Option Plan").

FTL Capital adopted the Phantom Option Plan, which became effective on September 1, 2014. The Phantom Option Plan provided incentives to key employees of FTL Capital and certain FTL Capital affiliates by offering them the right to share in the appreciation of FTL

---

[1] Melnuk and Hillman held their ownership interests in FTL Capital through trusts they controlled. Therefore, the named parties in this case are Paul D. Melnuk, Trustee of the Paul D. Melnuk Revocable Trust Dated March 8, 2012 and Melnuk Family Dynasty Trust Dated December 19, 2012 and Thomas J. Hillman, Individually and as Trustee of the Thomas J. Hillman Living Trust Dated May 18, 1993.

Capital through phantom option bonus awards.  The Phantom Option Plan provided FTL Capital would pay phantom option bonus awards to enrolled employees upon a "change of control."  The Phantom Option Plan defined "change of control" as "any sale, transfer or issuance or series of sales, transfers and/or issuances of *greater than fifty percent (50%)* of the voting Membership Units of the Company or by the owner(s) of such Membership units."  (emphasis added).  The Phantom Option Plan provided amendments and revisions to its terms must be approved by FTL Capital's Members "if the amendment would . . . materially increase the benefits accruing to Participants under the [Phantom Option] Plan."

In early 2015, before Melnuk and Hillman executed the Buy/Sell Agreement, an employee enrolled in the Phantom Option Plan requested the definition of "change of control" be changed under the Phantom Option Plan so phantom option bonus awards would be due upon any sale, transfer, or issuance of *fifty percent or more* of the voting Membership units rather than any sale, transfer, or issuance of *greater than fifty percent* of the voting Membership units.  The requested change would require FTL Capital to pay phantom option bonus awards to enrolled employees if either Melnuk or Hillman sold his interest in FTL Capital, as Melnuk and Hillman were the sole Members.  Melnuk did not agree to the amendment.

Melnuk alleged that, without Melnuk's knowledge or permission, Hillman changed the definition of "change of control" within the Phantom Option Plan to require payment upon "any sale, transfer or issuance or series of sales, transfers and/or issuances of *fifty percent (50%) or more* of the voting Membership Units of the Company or by the owner(s) of such Membership units."  (emphasis added).  Melnuk alleged Hillman, assisted by FTL Capital's Chief Financial Officer Megan Lane, effectuated this change by affixing Melnuk's signature, without Melnuk's knowledge or permission, to an amended version of the Phantom Option Plan.  Hillman paid

3

over $586,000 to employees enrolled in the Phantom Option Plan, including over $60,000 to Lane. Hillman then notified Melnuk he intended to reduce the principal amount under the Promissory Note by $287,167 as a contingent liability adjustment under the Buy/Sell Agreement, which represented half the amount FTL Capital paid enrolled employees under the Phantom Option Plan. Hillman asked Melnuk to execute an amendment to the Promissory Note reducing the principal amount under the Promissory Note by $287,167. Melnuk refused, arguing the $287,167 was not an authorized contingent liability adjustment under the Buy/Sell Agreement.

Both the Operating Agreement and the Buy/Sell Agreement contained arbitration clauses. The arbitration clause in the Operating Agreement provided:

> Any claim or dispute regarding the interpretation, application or enforcement of this Agreement shall be resolved exclusively by arbitration in St. Louis before a single arbitrator in accordance with the rules then in effect of the American Arbitration Association for commercial disputes, and any judgment rendered thereon shall be enforced in the state or federal courts located in St. Louis, Missouri.

The arbitration clause in the Buy/Sell Agreement provided:

> With the exception of injunctive relief, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Expedited Procedures, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitrator may not award punitive or consequential damages and the prevailing party shall be awarded its attorney fees.

The Phantom Option Plan contained no arbitration clause. In 2016, Hillman initiated arbitration (the "2016 Arbitration"), seeking a declaratory judgment that certain contingent liability adjustments were valid under the Buy/Sell Agreement. Specifically, Hillman sought a declaratory judgment that the contingent liability adjustment for the phantom option bonus awards was valid under the Buy/Sell Agreement and that the principal amount under the Promissory Note should be reduced by $287,167. Melnuk challenged the validity of several

contingent liability adjustments under the Buy/Sell Agreement. He denied the contingent liability adjustment for the phantom option bonus awards was valid and instead claimed the adjustment was not authorized by the Buy/Sell Agreement. Melnuk asserted two counterclaims. The first sought a declaratory judgment that the principal amount under the Promissory Note should be increased by $121,884 based on certain adjustments. The second sought acceleration of Hillman's payment of the principal amount under the Promissory Note because of Hillman's alleged failure to make certain interest payments on the Promissory Note.

A four-day arbitration hearing was held in June 2016. The arbitrator entered his award on July 12, 2016 (the "2016 Arbitration Award"). The 2016 Arbitration Award stated the issues presented in the 2016 Arbitration were "ten potential adjustments" of the principal amount Hillman owed Melnuk under the Promissory Note. The 2016 Arbitration Award concluded the phantom option bonus awards "met the contractual definition of a contingent liability adjustment" and, thus, resulted in a reduction of the principal amount owed under the Promissory Note. The 2016 Arbitration Award also stated:

> In so finding, I express no opinion as to whether [Melnuk] might have a claim against [Hillman] for breach of fiduciary duty or other cause of action relating to [Hillman's] alleged improper modification of the "change of control" provision of the [Phantom Option] Plan. Any such claim is beyond the scope of this arbitration.

The trial court confirmed the 2016 Arbitration Award on February 13, 2018.[2] On January 4, 2019, Melnuk filed his petition ("Petition") in the St. Louis County Circuit Court, asserting claims for damages against both Hillman and Lane for breach of fiduciary duty, fraud, and conspiracy regarding their unauthorized amendment of the "change of control" provision in the Phantom Option Plan. In addition, Melnuk asserted a claim for damages against Hillman for

---

[2] *See Paul D. Melnuk, Trustee of the Paul D. Melnuk Revocable Trust dated March 8, 2012, et al. v. Thomas J. Hillman, Trustee of the Thomas J. Hillman Living Trust dated May 18, 1993*, Cause No. 17SL-CC01782.

5

breach of the Phantom Option Plan and against Lane for unjust enrichment. Melnuk's Petition prayed for damages totaling $287,167, which represented the reduction of the principal amount under the Promissory Note attributable to the phantom option bonus awards adjustment.

On April 18, 2019, Hillman and Lane moved to compel arbitration. Hillman and Lane argued the parties agreed to delegate threshold issues of arbitrability of "any claim or dispute regarding the interpretation, application, or enforcement of" the Operating Agreement and "any controversy or claim arising out of or relating to" the Buy/Sell Agreement. Therefore, Hillman and Lane argued the trial court should compel arbitration of Melnuk's claims for damages rather than allow them to proceed in trial court. In response, Melnuk argued the 2016 Arbitration Award determined his claims for damages relating to Hillman's and Lane's alleged unauthorized amendment of the "change of control" provision were beyond the scope of the arbitration clauses in the Operating Agreement and Buy/Sell Agreement and must be brought in trial court. On June 11, 2019, the trial court entered its order granting Lane's application to compel arbitration and denying Hillman's application to compel arbitration.

Hillman's appeal follows.

**Standard of Review**

"Whether arbitration should be compelled is a question of law, which we review *de novo*." *Esser v. Anheuser-Busch, LLC*, 567 S.W.3d 644, 648 (Mo. App. E.D. 2018) (citing *Jackson v. Higher Educ. Loan Auth. of Mo.*, 497 S.W.3d 283, 287 (Mo. App. E.D. 2016)).

**Discussion**

In his first point, Hillman argues the trial court erred in denying his application to compel arbitration because the parties' agreements to arbitrate in the Operating Agreement and the Buy/Sell Agreement contained delegation clauses requiring threshold questions of arbitrability

6

be submitted to an arbitrator. Hillman also argues Melnuk's claims for damages were not raised in the 2016 Arbitration and their arbitrability was not decided in the 2016 Arbitration Award. He argues the 2016 Arbitration only resolved the arbitrability of claims related to which contingent liability adjustments were valid under the Buy/Sell Agreement, not claims related to possible damages Melnuk suffered because of Hillman's unauthorized amendment of the "change of control" provision in the Phantom Option Plan. He argues, because Melnuk never pled claims for damages arising from Hillman's alleged unauthorized amendment of the "change of control" provision in the Phantom Option Plan in the 2016 Arbitration, arbitrability of those claims could not have been decided by the 2016 Arbitration Award. Thus, he argues he cannot be collaterally estopped by the 2016 Arbitration Award from compelling arbitration of Melnuk's claims for damages. Regardless, he argues an arbitrator, rather than a court, must decide whether he is collaterally estopped from compelling a second arbitration.

Melnuk does not dispute the Operating Agreement and the Buy/Sell Agreement contained delegation clauses requiring threshold questions of arbitrability be submitted to an arbitrator. Rather, Melnuk argues he raised issues relating to Hillman's alleged unauthorized amendment of the "change of control" provision "at every step" of the 2016 Arbitration and the 2016 Arbitration Award concluded Melnuk's claims for damages were beyond the scope of the arbitration clauses in the Operating Agreement and the Buy/Sell Agreement. Thus, Melnuk argues Hillman is collaterally estopped by the 2016 Arbitration Award from compelling arbitration of his claims for damages. He argues the court, rather than an arbitrator, must decide whether Hillman is collaterally estopped from compelling a second arbitration.

"Arbitration is a matter of contract under the Federal Arbitration Act" ("FAA"). *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018) (internal citations omitted). "An

7

arbitrator's authority over a particular dispute exists only 'because the parties have agreed in advance to submit such grievances to arbitration.'" *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986)). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The United States Supreme Court has recognized "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," through a delegation clause. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). *See* Am. Arbitration Ass'n, AAA Commercial Arbitration Rule R-7(a) (2013) (delegating to an arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim").

Courts presume the parties intend courts, not arbitrators, to decide threshold disputes about arbitrability, unless the parties "clearly and unmistakably" provide otherwise. *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 45 (Mo. banc 2017) (internal quotations omitted). Where parties express their intent to arbitrate any dispute under the American Arbitration Association ("AAA") commercial arbitration rules, "clear and unmistakable" intent to delegate threshold issues of arbitrability to an arbitrator is established. *Id.* at 48. Here, Melnuk and Hillman do not dispute they delegated threshold issues of whether a claim, dispute, or controversy related to the Operating Agreement or the Buy/Sell Agreement is arbitrable to an arbitrator, as their agreements contain arbitration clauses that incorporate the AAA commercial arbitration rules by reference. *See id.*

8

Melnuk and Hillman dispute whether the arbitrability of Melnuk's claims for damages related to Hillman's unauthorized amendment of the "change of control" provision in the Phantom Option Plan was decided in the 2016 Arbitration Award so Hillman is collaterally estopped from compelling a second arbitration. "Collateral estoppel, [or] issue preclusion, 'precludes relitigation of an issue previously decided and incorporated into an earlier judgment.'" *Johnson v. Mo. Dep't of Health & Senior Servs.*, 174 S.W.3d 568, 580 (Mo. App. W.D. 2005) (quoting *Sexton v. Jenkins & Assocs., Inc.*, 152 S.W.3d 270, 273 (Mo. banc 2004)). "For purposes of collateral estoppel, an arbitration award may constitute a final judgment on the merits." *Graybar Elec. Co., Inc. v. Fed. Ins. Co.*, 567 F. Supp. 2d 1116, 1123 (E.D. Mo. 2008) (internal citations omitted).

Melnuk and Hillman dispute *who*—an arbitrator or the court—determines whether Hillman's second arbitration demand is collaterally estopped by the 2016 Arbitration Award. Hillman argues, because the parties have agreed through the delegation clauses in the Operating Agreement and the Buy/Sell Agreement to arbitrate threshold questions of arbitrability, an arbitrator must decide whether he is collaterally estopped from compelling a second arbitration of Melnuk's claims for damages. Melnuk argues a court must determine whether Hillman is collaterally estopped from compelling a second arbitration of his claims for damages.

Missouri courts have not addressed *who*—an arbitrator or the court—determines the collateral estoppel effect of a prior arbitration award. Because this is an issue of first impression, we look to federal decisions for guidance. In *AT&T Techs., Inc.*, 475 U.S. at 649, the Supreme Court held that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002) (quoting *John Wiley & Sons, Inc. v.*

*Livingston*, 376 U.S. 543, 557 (1964)), the Supreme Court held "'procedural' questions which grow out of the dispute and bear on its final disposition,'" including disputes regarding whether a condition precedent to arbitrability has been fulfilled, are presumptively for an arbitrator to decide. The Court held it is for an arbitrator to rule on allegations of "defense[s] to arbitrability," such as "time limits, notice, laches, [and] *estoppel*." *Id.* at 84. (internal citations, quotations, and alterations omitted) (emphasis added).

The District of Columbia Circuit applied the rules announced in *AT&T Techs., Inc.* and *Howsam* to one party's allegation that another party was collaterally estopped from demanding a second arbitration by a prior arbitration award in *W&T Travel Services, LLC v. Priority One Servs., Inc.*, 69 F. Supp. 3d 158 (D.D.C. 2014). In *W&T Travel Services, LLC*, the District of Columbia Circuit ruled that whether a second demand for arbitration is collaterally estopped because the issues were decided in a prior arbitration award is for an arbitrator to decide. *Id.* at 171-72. The court reasoned collateral estoppel is an "affirmative defense[ ] directed to the merits" of the underlying claims presented in the demand for arbitration. *Id.* at 171. Citing *AT&T Techs., Inc.*, 475 U.S. at 649 and *Howsam*, 537 U.S. at 84-85, the District of Columbia Circuit decided it would be improper for the court to address whether a second arbitration demand was collaterally estopped by a prior arbitration award, as to do so "would constitute a rul[ing] on the potential merits of the underlying claims." *Id.* at 171-72 (internal quotations omitted) (alteration in original). Accordingly, the court held the merits of an argument challenging the scope of the issues resolved in a prior arbitration award "must be presented to and resolved by [a] . . . second arbitration proceeding." *Id.* at 171.

Just as in *W&T Travel Services, LLC*, any claim by Melnuk that the 2016 Arbitration Award collaterally estops Hillman from compelling a second arbitration cannot be properly

considered by a court. Whether the 2016 Arbitration resolved Melnuk's claims for possible damages arising from Hillman's unauthorized amendment of the "change of control" provision in the Phantom Option Plan, as Melnuk contends, or just those claims regarding which of the contingent liability adjustments in the Buy/Sell Agreement were valid, as Hillman contends, is a merits issue. Therefore, we leave any evaluation of Melnuk's collateral estoppel defense to Hillman's second arbitration demand to an arbitrator so as not to "rul[e] on the potential merits of the underlying claims." *Id.* at 172.

The District of Columbia Circuit's holding in *W&T Travel Services, LLC*'s is consistent with other federal circuit courts that have addressed this issue. *See Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 131 (2d Cir. 2015) (holding the claim and issue preclusive effect of prior arbitration awards are not questions of arbitrability because they, like other affirmative defenses, are legal defenses to the opposing party's claims and are themselves a component of the dispute on the merits); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1128 (9th Cir. 2000) (holding the res judicata effect of a prior arbitration award on a subsequent arbitration is an issue to be determined by an arbitrator "because res judicata is a legal defense that is necessarily intertwined with the merits"); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 140 (3d Cir. 1998) (holding that a "res judicata objection based on [a] prior arbitration is an issue to be arbitrated and is not to be decided by the courts."); *Emp'rs Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25, 27 (1st Cir. 2014) (internal citations, quotations, and alterations omitted) ("there is broad agreement among the circuit courts that the effect of an arbitration award on future awards is properly resolved through arbitration."); *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 968 (7th Cir. 2000) (internal citations and quotations omitted) ("[T]he preclusive effect of the first arbitrator's

decision is an issue for a later arbitrator to consider."); *Oil, Chem. & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Tex. Inc.*, 677 F.2d 492, 494 (5th Cir. 1982) (internal citations and quotations omitted) ("Whether [a prior arbitration] award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties" is not for the courts to decide. "If the parties do not agree, that issue itself is a proper subject for arbitration.").

The cases Melnuk cites are easily distinguishable. Melnuk cites *Cooper v. Yellow Freight Sys., Inc.*, 589 S.W.2d 643, 645 (Mo. Ap. E.D. 1979) and *Pratt v. Purcell Tire & Rubber Co., Inc.*, 846 S.W.2d 230, 233 (Mo. App. E.D. 1993) to argue a party is barred from asserting a claim identically presented and determined in a prior arbitration proceeding. He also cites and *Macomber v. MacQuinn-Tweedie*, 834 A.2d 131, 136-37 (Me. 2003) for the proposition that arbitration "is not intended to afford a litigant the opportunity to use arbitration to revisit a dispute that has been previously resolved." Here, by contrast, Hillman claims the 2016 Arbitration Award declined to consider and resolve Melnuk's claims for damages.[3] Melnuk also cites *New York State Ass'n for Retarded Children, Inc. v. Carey*, 456 F. Supp. 85, 96 (E.D.N.Y. 1978) to argue the collateral estoppel effect of a prior arbitration award "is a question for the court, not for the arbitrator before whom the point is sought to be relitigated." However, to the extent Melnuk claims *Carey* broadly stands for the proposition that the court can rule on the merits of the plaintiff's affirmative defense in determining arbitrability, that reading is foreclosed by the Supreme Court's decision in *AT&T Techs. Inc.*, 475 U.S. at 649 that a court should not rule on the merits of underlying claims when deciding whether the parties agreed to submit a

---

[3] We note *Macomber v. MacQuinn-Tweedie*, 834 A.2d 131, 136-37 (Me. 2003) did not even involve the application of issue preclusion principles to a prior arbitration award; rather, it involved the application of issue preclusion principles to a prior *judgment* entered by a trial court following a trial.

dispute to arbitration and *Howsam*, 537 U.S. at 84-85 that procedural questions bearing on a dispute's final disposition must be decided by an arbitrator. Further, none of the cases Melnuk cites involved interpretation of the FAA or AAA commercial arbitration rules.

An arbitrator must decide whether Hillman is collaterally estopped by the 2016 Arbitration Award from compelling arbitration of Melnuk's claims for damages not because the parties agreed to submit threshold questions of arbitrability to an arbitrator but because evaluating Melnuk's collateral estoppel defense is a "'procedural' question[ ] which grow[s] out of the dispute and bear[s] on its final disposition." *See Howsam*, 537 U.S. at 84-85. Thus, the merits of Melnuk's argument regarding the scope of the 2016 Arbitration Award and, specifically, whether the 2016 Arbitration Award resolved Melnuk's claims for damages relating to Hillman's unauthorized amendment of the "change of control" provision in the Phantom Option Plan must be presented to an arbitrator and resolved by a second arbitration proceeding. Having decided an arbitrator must determine the collateral estoppel effect of the 2016 Arbitration Award, we decline to address the merits of Melnuk's collateral estoppel defense as to why Hillman should not prevail in the second arbitration and instead leave that matter to an arbitrator.

Point I granted.

## Point II

In his second point, Hillman argues, even if the arbitration agreements contained no valid delegation clauses, Melnuk's claims should be arbitrated because the Operating Agreement and the Buy/Sell Agreement contain broad arbitration clauses and Melnuk's claims "touch[ ] matters covered by" those contracts. Because we find an arbitrator must determine the collateral estoppel effect of the 2016 Arbitration Award, we need not address the issue raised in Hillman's second point.

13

Point II is denied.

## Conclusion

The trial court's order overruling Hillman's motion to compel arbitration is reversed, and the trial court shall stay the case and order the parties to proceed to arbitration.

_____
Philip M. Hess, Presiding Judge

Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.